VICTORIA JUST, demandante y apelada, *v.* ANGEL MORENO y ELSA ARCELAY DE MORENO, demandados y apelantes.

Núm. 8849.—*Sometido:* Marzo 16, 1944. *Resuelto:* Mayo 17, 1944.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de los apelantes; *Brown, González & Newsom,* y *Carlos J. Faure,* abogados de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Los demandados se dedican a la empresa de alquilar apartamientos de un edificio que poseían en Santurce. Alquila-

ron uno de ellos al Sr. Samuel E. Badillo. La escalera común a todos los apartamientos no tenía luz cuando ocupó el suyo el señor Badillo, pero posteriormente otro inquilino se quejó de la falta de luz en la escalera, y los arrendadores pusieron una luz que según se infiere de la evidencia tenía el *switch* en la planta baja. Un empleado de los arrendadores tenía instrucciones de éstos de encender la luz al obscurecer y de apagarla a las diez y media de la noche. Allá para el 27 de noviembre de 1941 la demandante fué a visitar al señor Badillo como a las ocho de la noche y al llegar al edificio notó que la luz no había sido encendida, pero ello no fué obstáculo para que la demandante y sus amigas que la acompañaban subiesen hasta el apartamiento del señor Badillo. La visita se prolongó hasta las diez y media de la noche. A esa hora la escalera continuaba oscura, y el señor Badillo que las acompañó hasta la salida de su apartamiento, les aconsejó que tuviesen cuidado para evitar una caída debido a la oscuridad del sitio. La demandante ni sus compañeras pidieron al señor Badillo luz artificial ni encendieron fósforos para alumbrarse, pero tampoco el señor Badillo se los ofreció. La demandante se agarró del pasamanos, pero al llegar a uno de los descansos de la escalera, pisó en falso y cayó sufriendo, como consecuencia de la caída, la fractura del húmero. La corte inferior dictó sentencia a favor de la demandante por la cantidad de mil quinientos dólares por concepto de daños y perjuicios, más las costas.

Declaró la corte que en Puerto Rico no existe ley alguna que obligue al arrendador de un apartamiento a mantener alumbrada durante la noche la escalera común a los distintos apartamientos; pero sostuvo que al suministrar la luz en la escalera los demandados asumieron la obligación implícita de mantenerla alumbrada, y que al tenerla apagada la noche de autos, incurrieron en negligencia la cual fué la causa próxima del accidente. Resolvió además la corte que la demandante no incurrió en negligencia contribuyente por haber

subido al apartamiento de Badillo á pesar de que la escalera estaba oscura y por no haber pedido luz artificial para descender.

Los apelantes no impugnan la cuantía de la sentencia, limitando la controversia a los errores que imputan a la corte inferior (1) al sostener ésta que los demandados eran responsables del accidente por haber asumido implícitamente la obligación de suministrar luz a la escalera durante la noche, y (2) al resolver que la demandante no fué culpable de negligencia contribuyente al descender por una escalera totalmente oscura que ella no conocía.

■ ■■■ De la prueba no aparece que existiera una obligación contractual por parte de los demandados de suministrar luz durante las horas de la noche para la escalera de uso común de los inquilinos. No existe un estatuto que expresamente imponga ese deber al arrendador, ni tampoco se alegó ni probó que tal luz debería ser suministrada por los arrendadores de acuerdo con los usos y costumbres del lugar. *Pueblo* v. *Central Cambalache*, 62 D.P.R. 553, 558.(¹) Debemos, pues, recurrir al artículo 1444 del Código Civil, ed. 1930, para determinar si de sus términos puede inferirse ese deber por parte del arrendador de un apartamiento. El referido artículo prescribe:

"El arrendador está obligado:

"1. A entregar al arrendatario la cosa objeto del contrato.

"2. A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.

"3. A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato.

"\*     \*     \*     \*     \*     \*     \* "

---

(¹)"No existe contrato en que los usos y costumbres locales ejerzan tan poderosa influencia como en el arrendamiento, de tal suerte, que muchos arrendamientos, salvo en aquello que es esencial y constante, se puede decir que están exclusivamente regidos por la costumbre." 10 Manresa, Comentarios al Código Civil, pág. 465.

El párrafo dos del transcrito precepto legal, que alguna analogía guarda con la cuestión envuelta, limita la obligación del arrendador a hacer las *reparaciones* necesarias a fin de *conservar* la cosa objeto del contrato en estado de servir para el uso a que ha sido destinada. El pensamiento del legislador al usar en el citado artículo las palabras "reparaciones" y "conservarla" no pudo ser imponer al arrendador el deber de hacer mejoras o de dotar la cosa arrendada de comodidades que no existían en la cosa al perfeccionarse el contrato. Interpretando este mismo artículo, el Tribunal Supremo de Filipinas sostuvo que por la palabra "reparaciones" tal cual se emplea en el párrafo dos del artículo 1554 del Código Civil de Filipinas, se entiende el volver a poner una cosa en las mismas condiciones en que se hallaba antes, y no el mejorar aquella mediante la adición de algo nuevo. *Alburo v. Villanueva*, 7 Jur. Fil. 285. Tratando del alcance del deber de hacer reparaciones impuesto al arrendador por el artículo 1554 del Código Civil español, igual al 1444 del nuestro, dice Manresa:

"De ahí que la palabra reparaciones, debe entenderse equivalente a la de toda clase de obras y trabajos necesarios para obtener el fin que se desea, en cuanto a su importancia merezca el concepto de una reparación."[2] 10 Manresa, Comentarios al Código Civil, pág. 469.

En el Código Civil argentino se expresa el mismo concepto de la palabra "reparaciones," en relación con el deber de hacerlas que la ley impone al arrendador. El artículo 1516 del aludido Código dice:

"La obligación de mantener la cosa en buen estado, consiste en hacer las reparaciones que exigiere el deterioro de la cosa, por caso fortuito o de fuerza mayor, o el cual se causare por la calidad pro-

---

[2] El vocablo "reparación" lo define el Diccionario de la Real Academia: "acción y efecto de reparar," y el vocablo "reparar": "componer, aderezar o enmendar el menoscabo que ha padecido una cosa."

pia de la cosa, o por vicio o defecto de ella, cualquiera que fuese, o lo que proviniese del efecto natural del uso o goce estipulado, o lo que sucediere por culpa del locador, sus agentes o dependientes.''

Estando la escalera en cuestión dedicada al uso común de los distintos inquilinos, parece más conveniente que sea el arrendador y no el inquilino quien deba mantenerla alumbrada; pero nada impide que sean los inquilinos quienes asuman esa obligación. Sea como fuere, toda vez que ni la ley, ni el contrato celebrado con el inquilino imponen ese deber al arrendador y puesto que no se alegó ni probó que lo impongan los usos y costumbres del lugar, no está dentro de las facultades de los tribunales exigir su cumplimiento al arrendador. A este efecto dice Manresa:

''Lo mismo el que toma fincas en arrendamiento, que el que las compra, debe apreciar si le conviene o no, y una vez vistas, y convenidos los contratantes, cumple el arrendador con entregar la cosa en el estado en que se hallaba al perfeccionarse el contrato.'' Ob. y t. cit., pág. 467.

En el presente caso ya hemos visto que al celebrarse el contrato de arrendamiento no existía esa luz, y sin exigirla al arrendador, el señor Badillo aceptó el inmueble arrendado. La cuestión aquí envuelta no es nueva en Louisiana, cuyo Código Civil en sus artículos 2692 y 2693 impone al arrendador el deber de mantener la cosa arrendada en condiciones de servir para el uso a que se le destina y a hacer durante el arrendamiento las reparaciones que puedan ser necesarias para el debido cumplimiento de ese deber. En el caso de *Caulfield* v. *Saba* (La., 1932), 144 So. 907, se sostuvo por la Corte de Apelaciones de Luisiana que no existe ninguna disposición legal expresa ni puede inferirse ésta de las disposiciones del Código Civil relativas al arrendamiento, que imponga al arrendador el deber de iluminar, durante la noche, un corredor usado en común por un número de inquilinos para ir al inodoro.

Esa es la regla que en ausencia de estatuto(³) impera en los Estados Unidos, Inglaterra y Canadá. Sólo admite una excepción, y es cuando la escalera o el corredor de uso común han sido construídos de tal manera que ofrecen peligro especial. En ese solo caso es deber del arrendador mantener alumbrada dicha escalera o corredor bajo su control. Véanse los casos acopiados en las monografías en 97 A.L.R. 220, 223; 75 id. 154, 166; 58 id. 1411, 1419; 39 id. 294, 302; y 25 id. 1273, 1312.

██ Existe sin embargo en el presente caso una circunstancia que en ausencia de negligencia contribuyente impone a los demandados la obligación de reparar el daño una vez que se llegue a la conclusión de que la falta de luz en la escalera fué la causa próxima del accidente. Es doctrina corriente en todas las legislaciones que el que asume el deber de ejecutar un acto que no le ha sido impuesto por la ley ni por contrato ni por la costumbre del lugar, tiene la obligación de ejecutarlo con la debida diligencia, y si al realizarlo, por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado, pues la ley presume que al asumir el deber de ejecutar el acto, lo hace con la intención de someterse a todos sus efectos jurídicos. 12 Manresa, Comentarios al Código Civil, 548 *et seq.* Esa es la misma doctrina de la obligación implícita de la ley común, que invocan la corte inferior y la apelada, pero que en el derecho civil no es otra cosa que un cuasicontrato innominado.

En el presente caso ya hemos visto que los demandados voluntariamente accedieron a suministrar la luz de la escalera y que a ese efecto habían dado instrucciones a un empleado suyo para que todas las noches la mantuviese encendida hasta las 10:30. La noche de autos sin embargo, no

---

(³)La regla ha sido variada por estatuto en otras jurisdicciones, tales como Nueva York, New Jersey, Connecticut. En Ohio existen ordenanzas municipales a ese efecto.

fué encendida la luz sin que se alegase ni probase circunstancia alguna que justificase la omisión. Fué precisamente la falta de luz la que impidió a la demandante ver donde ponía el pie, y esa pisada en falso causó la caída que produjo los daños sufridos por la demandante. Por lo tanto, la falta de luz fué la causa próxima del accidente.

¿Fué la demandante culpable de negligencia contribuyente? La prueba demuestra que otra noche ella había visitado la casa del señor Badillo, y que en aquella ocasión llegó como a las ocho y al despedirse, alrededor de las nueve de la noche, la luz de la escalera estaba encendida. La demandante al subir la noche del accidente, racionalmente pudo presumir que al terminar la visita ya la luz estaría encendida. Pero al salir del apartamiento, a las diez y media, la escalera permanecía oscura; el señor Badillo que la acompañó hasta la puerta de su apartamiento, no le ofreció luz alguna, limitándose a aconsejarle que bajase con cuidado, lo cual hizo ella agarrándose con una mano como ordinariamente se hace en tales casos. No consta cuál fuese la confianza que pudiese existir entre la demandante y el señor Badillo para que ella se permitiese pedirle que le facilitase una luz artificial que él probablemente no tenía, ya que no la ofreció a pesar de que le aconsejó que tuviese cuidado por la oscuridad que allí existía.

Consideradas las circunstancias expuestas, convenimos con el juez de la corte *a quo* en que la demandante no incurrió en negligencia contribuyente. Siendo la negligencia de los demandados la causa próxima del accidente, y encontrándose la demandante en el edificio con fines legítimos al ocurrir el accidente, es deber de los demandados reparar el daño causado.

*Procede la confirmación de la sentencia.*