ABRAHAM W. GOOSE, demandante, apelado y apelante, *v.* HILTON HOTELS INTERNATIONAL, INC., y COMMERCIAL CASUALTY INSURANCE CO., INC., demandadas, apelantes y apeladas.

Número 11804.

*Sometido:* 7 de mayo de 1956. *Resuelto:* 29 de junio de 1956.

*Bolívar Pagán, Francisco Ponsa Feliú* y *Luis Blanco Lugo,* abogados de las apelantes y apeladas; *F. Fernández Cuyar* y *Luis Tirado Géigel,* abogados del apelado y apelante.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

El 20 de marzo de 1951 Abraham Goose, huésped del Hotel Caribe Hilton, de San Juan, sufrió lesiones al resbalar y caer por una escalera del hotel. Goose instó demanda ante el Tribunal Superior contra la Hilton Hotels International, Inc., que opera el hotel, y la Commercial Casualty Insurance Co., Inc., reclamando daños y perjuicios por las lesiones recibidas. Ambas partes han apelado de la sentencia del tribunal sentenciador concediendo al demandante la suma de $7,500 por sus lesiones y $300 por gastos médicos, o sea $7,800.

En su apelación las demandadas sostienen que el tribunal sentenciador cometió error (*a*) al resolver que el hotel fué negligente y (*b*) al no resolver que el demandante fuera culpable de negligencia contribuyente. Esto nos compele a exponer brevemente la manera en que ocurrió el accidente.

El demandante y su amigo, John J. Flemm, compañero de habitación, fueron los únicos testigos que declararon sobre cómo ocurrió el mismo. Las demandadas no impugnan sus testimonios y aceptan las conclusiones de hechos del tribunal sentenciador con respecto a éste. La única evidencia ofrecida por las demandadas fueron las declaraciones de (1) un médico que examinó al demandante antes del juicio, (2) un ingeniero civil, y (3) un empleado del hotel en cuanto a las condiciones de la escalera.

Los huéspedes en traje de baño que desearan usar la piscina eran requeridos por reglamentación del hotel a usar el

ascensor de carga hasta el sótano del edificio y subir por una escalera al patio donde radica la piscina. La escalera, que tiene doce escalones, está construída a un ángulo de 30° y tiene un ancho de 6 pies 8–½ pulgadas. Cada escalón tiene 11–½ pulgadas de huella y 6 pulgadas de contrahuella. Los escalones son de cemento, divididos en losetas cuadradas de dos pulgadas, separadas por estrías. Estas estrías ayudan para eliminar de los escalones el exceso de agua; también sirven para darle a los escalones un poco más de seguridad para los huéspedes. Sin embargo, a la fecha del accidente, los escalones tenían una franja de tres pulgadas de cemento liso en el borde. La escalera sólo tenía un pasamano al lado derecho, bajando. A cada lado de la escalera hay una pared de concreto. Los escalones de ordinario estaban mojados a causa de la lluvia y del tránsito de bañistas que iban a y regresaban de la piscina.

Como a las 11 a.m. Goose y Flemm fueron a la piscina usando el ascensor de carga y la escalera. Luego de un chapuzón y de sentarse al sol por un rato, iniciaron el regreso a su habitación. Cuando Goose se acercó a la escalera, iba seguido de Flemm. Cuando comenzó a bajarla subían aproximadamente 6 personas, incluyendo dos niños, por el lado donde está el pasamano. Goose empezó a bajar por el centro de la escalera, desviándose hacia la pared izquierda, donde no había pasamano, para evitar chocar con las personas que subían por el otro lado que tenía el pasamano. El demandante resbaló en el borde liso y húmedo del tercer o cuarto escalón, trató de agarrarse infructuosamente de la pared contra la cual se raspó el brazo y el pecho cayendo por la escalera al piso, recibiendo a causa de ello las lesiones aquí envueltas.

Goose desde luego era un "invitado" del hotel. "El poseedor no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección. No existe responsabilidad por lesiones resultantes de condiciones peligrosas

que desconoce, y que una inspección razonable no descubriría, *o de condiciones de las cuales no se anticiparía un riesgo no razonable.* De igual manera, en el caso corriente, no hay obligación de proteger al visitante contra peligros que le son conocidos, *o que son tan aparentes que puede razonablemente esperarse que los descubra y se pueda proteger.* El visitante tiene derecho, sin embargo, a suponer que se ha ejercido el cuidado debido para que el local sea seguro para él, y no viene obligado, como en el caso de un *licensee*, a estar a la expectativa para descubrir posibles defectos." (Bastardillas nuestras.) Prosser, *Torts*, sec. 79, pág. 642; id., 2da. ed., sec. 78, pág. 459, citando casos recientes; *Gutiérrez v. Bahr*, 78 D.P.R. 473; *Shaubell v. Bennett*, 252 P.2d 927 (Kans., 1953); *Coston v. Skyland Hotel*, 57 S.E.2d 793 (S.C., 1950); *Harral v. Kent Corporation*, 212 P.2d 356 (Kans., 1949); casos recogidos en 28 Am.Jur. págs. 578 a 581, 38 id., 754 a 758, 43 C.J.S. sec. 22, pág. 1176 *et seq. Cf.* Anotación, 27 A.L.R.2d 822. Si existe o no responsabilidad bajo los principios que acabamos de exponer, depende de los hechos y circunstancias de cada caso.

██ El hotel no sería responsable si Goose, debido a su propia falta de cuidado, hubiera resbalado y caído en un escalón corriente de una escalera. Pero aquí el demandante venía obligado a usar la escalera para ir a la piscina; los escalones normalmente estaban mojados; y la escalera era muy ancha para permitirle a todos los bañistas usar el único pasamano en ambas direcciones. Por consiguiente, quizás podría argüirse que bajo estas circunstancias la escalera, equipada con un solo pasamano, era irrazonablemente peligrosa.(¹) Sin embargo, es innecesario determinar si lo anterior sería suficiente para establecer la negligencia del hotel. Hay un factor adicional que hacía que estos escalones

---

(¹) El empleado del hotel declaró que se había ordenado un segundo pasamano antes de que ocurriera el accidente pero no se había instalado porque el hotel—que se inauguró un año tres meses antes del accidente—todavía lo tenía entre las cosas pendientes. Posteriormente, el segundo pasamano fué instalado y se pusieron alfombras de goma en los escalones.

estrechos y mojados—sin la ayuda de un pasamano—fueran casi una trampa para un huésped de 50 años de edad como el aquí demandante; es decir, la franja de 3 pulgadas de cemento *liso* al borde de cada escalón.

■■ Convenimos en que si el demandante hubiera esperado hasta que la escalera estuviera despejada y hubiera asido el pasamano mientras bajaba, quizás el accidente no hubiera ocurrido. Pero el hotel en efecto lo invitó a que bajara la escalera sin la ayuda del pasamano al instalar sólo uno en una escalera comparativamente ancha por donde constantemente pasaban personas al bajar y subir. El demandante tenía, por consiguiente, derecho a esperar que los escalones propiamente dichos—que el hotel en efecto brindaba como seguros para el uso con un solo pasamano—no tenían ningunos aspectos intrínsecamente peligrosos. El hotel pudo haber provisto artefactos obvios de seguridad tales como pasamanos en ambos lados, cemento bruto o losetas con estrías cubriendo *toda* la superficie de cada escalón, o alfombras de goma, véase el escolio 1. En su lugar, instaló una franja de 3 pulgadas de cemento liso al borde de cada uno de estos estrechos escalones. La franja—debido al hecho de que siempre estaba mojada—constituía una amenaza potencial a la seguridad de una persona mayor que, al bajar por el lado de la ancha escalera que no tenía pasamano, normalmente pondría la planta del pie precisamente en esta franja lisa y mojada. El hotel—en violación de la regla establecida por Prosser arriba mencionada—creó una condición de la cual "se anticiparía un riesgo no razonable."

■ Es cierto que la franja lisa sería visible a aquel con mente prevenida. Pero esto no exonera a la demandada de responsabilidad *bajo las circunstancias de este caso.* Los bañistas normalmente no esperan que escalones estrechos que de ordinario están mojados, tengan una franja lisa. Y—aplicando la referida fórmula establecida por Prosser—la franja lisa no era "tan aparente que ... [el demandante podía] razonablemente ... descubrirla", particularmente

ya que éste—un cliente—no estaba obligado "a estar a la expectativa para descubrir posibles defectos." De esto surge que, no empece el hecho de que mediante examen detenido la franja lisa podía observarse, ésta—junto a la falta de pasamanos a ambos lados de la escalera—deben caracterizarse como irrazonablemente peligrosas, ya que un huésped que normalmente pasase por allí de ordinario no estaría supuesto a ver la franja. James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605, 625–26.([2]) Forzoso es concluir que el demandante recibió lesiones como resultado de la negligencia del hotel.

Lo que hemos dicho sobre la cuestión de la negligencia del hotel también dispone de la contención de que el demandante fué culpable de negligencia contribuyente. Como ya se ha indicado, el demandante fué en efecto invitado por el hotel a usar la escalera sin la ayuda de un pasamano. Y tenía derecho a suponer que los escalones podían

---

([2]) "El cliente en una tienda, por ejemplo, espera de ordinario que los pasillos y los corredores abiertos al público estén libres de obstáculos, trampas y *sitios resbalosos*. Como esto es así, condiciones claramente visibles muchas veces pueden ser peligrosas irrazonablemente para el cliente, ya que de hecho éste no está supuesto a observarlas." James, supra, pág. 625, escolio 118, y casos citados (bastardillas nuestras) ; *Restatement, Torts*, sec. 343, *Comments d y e;* id., sec. 893; Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U.Pa. L.Rev. 629, 635, 639, 642–45; James, *Assumption of Risk*, 61 Yale L.J. 141, 161; casos recogidos en 5 N.C.C.A. 3d 246 (1955) ; *Knight* v. *Moore*, 18 S.E.2d 266, 270 (Va., 1942) ; *Williamson* v. *Derry Electric Co.*, 196 Atl. 265 (N.H., 1938). Véase *Palmer* v. *Barreras*, 73 D.P.R. 278. *Cf. Conde* v. *New York Department Store*, 71 D.P.R. 189. Casos como *Walker* v. *Broad & Walnut Corporation*, 182 Atl. 643 (Pa., 1936) y *Ward* v. *Horn & Hardart Baking Co.*, 62 A.2d 97 (Pa., 1948), en que descansan las demandadas, son distinguibles porque en ellos los demandantes podían en el curso ordinario de las cosas fácilmente observar la condición peligrosa y fueron por consiguiente negligentes contributoriamente.

Es innecesario determinar si este caso cae bajo la regla de que "...la condición del peligro es tal que no se puede hacer frente a la misma con razonable seguridad, aun en el caso de que se conozca y se tenga conciencia del mismo." James, supra, pág. 626; Prosser, *Torts*, 2da. ed., pág. 462. Basta decir que bajo los hechos de este caso no se podía esperar del demandante que observara y estuviera consciente del peligro comprendido en los bordes lisos de los escalones.

usarse sin un pasamano. Por consiguiente, no venía obligado a detenerse e inspeccionar los escalones detenidamente a fin de descubrir la franja lisa. Véanse las autoridades citadas en el escolio 2 y el texto de la opinión que le precede; *Montgomery Ward & Co.* v. *Snuggins*, 103 F.2d 458, 463 (C.A. 8, 1939); *Ritter* v. *Norman*, 129 Pac. 103 (Wash., 1913); *Sokolsky* v. *Feigen*, 49 S.2d 88 (Fla., 1950); *Swift & Co.* v. *Schuster*, 192 F.2d 615 (C.A. 10, 1951); *Just* v. *Moreno*, 63 D.P.R. 673, 678; *Ramírez* v. *Hotel Condado*, 68 D.P.R. 953. De esto surge que la conducta del demandante al bajar la escalera sin asirse al pasamano y sin percatarse de la franja lisa al borde de cada escalón no constituyó negligencia contribuyente.

Las demandadas también sostienen que el demandante fué culpable de negligencia contribuyente porque no bajó la escalera poniendo primeramente el talón en la parte interior de cada escalón, la cual consistía de losetas cuadradas de 2 pulgadas separadas por estrías. Pero el propio testigo del hotel, el ingeniero, admitió y convenimos con ello, que éste no sería el modo corriente en que una persona bajaría por una escalera. Y, como ya se ha dicho, no era de esperarse que el demandante supiera que la franja era tan peligrosa que exigiese un modo de caminar tan poco usual. En verdad creemos que este argumento demuestra lo débil de la posición de las demandadas: al hacerlo las demandadas casi admiten que el hotel negligentemente confrontó al demandante con una situación peligrosa cuando le exigió que usara una escalera en estas condiciones.([3])

El tribunal sentenciador no incluyó en sus conclusiones de hechos y de derecho manifestaciones específicas con respecto a la cuestión de negligencia contribuyente, le-

---

([3]) Las demandadas citan varios casos sobre las cuestiones de negligencia y negligencia contribuyente. Los hemos examinado pero no vemos fin práctico para distinguirlos en detalle. Los mismos o envuelven hechos diferentes, o después de analizados cuidadosamente están contestes con nuestros puntos de vista aquí, o exponen principios que no estamos dispuestos a seguir.

vantada en la contestación de las demandadas. Éstas sostienen que bajo la regla establecida en *American Surety Co.* v. *Izquierdo*, 75 D.P.R. 260, y en *Darder* v. *Bayamón Truck Service*, 72 D.P.R. 77, debemos devolver el caso para que el tribunal haga una determinación de hecho y una conclusión de derecho específicas sobre esta cuestión. Pero en dichos casos asumimos esa actitud porque bajo todo el testimonio del caso no se descartó la posibilidad de que al demandado pudiera atribuírsele negligencia contribuyente. Aquí hemos resuelto que de la evidencia *incontrovertida* no podemos concluir que el demandante fué culpable de negligencia contribuyente. Por tanto, sería ilusorio devolver el caso para que se haga una conclusión a tal efecto.(4)

Finalmente, alegan las demandadas que la sentencia es excesiva. No nos enfrascaremos en la inútil tarea de comparar este caso con otros en que hemos confirmado o modificado sentencias del Tribunal Superior que tratan de diferentes lesiones. Nada encontramos en los autos que nos justifique intervenir con la discreción del tribunal sentenciador al fijar la cuantía de los daños en este caso. *Cf. Sociedad de Gananciales, etc.* v. *Cruz*, 78 D.P.R. 349; *Baralt* v. *Báez*, 78 D.P.R. 123.

En su apelación el demandante alega que el tribunal sentenciador cometió error al no concederle (*a*) $8,000 por pérdida de su sueldo durante 4 meses y (*b*) honorarios de abogados. El demandante declaró que "faltó" a "su trabajo" durante 4 meses como resultado de sus lesiones y que su sueldo de dos corporaciones era alrededor de $2.000 al mes. En ese momento el juez sentenciador intervino diciendo que las pérdidas no se reclamaban específicamente. El abogado del demandante sostuvo que no había que alegar específicamente tales daños, a lo que replicó el juez sentenciador: "Pero constituiría sorpresa; la doctrina

---

(4) Toda vez que aquí no hubo negligencia contribuyente, no consideramos la cuestión de la aplicación al presente caso de la Ley núm. 28 de 9 de junio de 1956, que enmendó el art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

general es que pérdida de ingresos son daños especiales." El abogado del demandante desistió entonces del interrogatorio sobre esta materia y las demandadas ni contrainterrogaron ni presentaron evidencia sobre la pérdida de sueldos.

El tribunal sentenciador cometió error al no permitirle al demandante demostrar la pérdida de sus sueldos. La demanda alega que "[e]l demandante es hombre de negocios, siendo Presidente de Pacific Smelting Co. de Cambridge, Mass. y accionista y director de Cambridge Smelting Co., en la misma localidad, y por sobre haberle causado grandes sufrimientos físicos y angustia mental, dichas lesiones le han proporcionado molestias, inconvenientes e *interrupciones en el curso normal y ordinario de sus negocios y actividades*." (Bastardillas nuestras.) Hemos resuelto que alegaciones similares son suficientes bajo las Reglas 9(*g*) y 8 (*f*) de las Reglas de Enjuiciamiento Civil para justificar la presentación de evidencia demostrativa de la pérdida de ingresos como una partida de daños en una acción de daños personales. *Prado* v. *Quiñones*, 78 D.P.R. 322; véase el caso de *Betances* v. *Autoridad de Transporte*, 73 D.P.R. 223.

Sin embargo, como el abogado del demandante admitió en la vista de este caso, no podemos en este momento incluir en nuestra sentencia ninguna suma por pérdida de sueldos, en vista del hecho de que la actuación del tribunal sentenciador al no permitir terminar la prueba sobre esta cuestión, impidió que ambas partes adujeran su evidencia y que contrainterrogaran a los testigos de la parte contraria. El caso, en consecuencia, tendrá que ser devuelto para que se practique prueba adicional y se emita una decisión sobre pérdida de sueldos.

Debido al hecho de que el tribunal sentenciador no permitió terminar la prueba sobre esta cuestión, de los autos no surge claro si las dos corporaciones continuaron pagando los sueldos al demandante mientras no estuvo prestándoles sus servicios. Las demandadas arguyen que si el demandante recibió sus sueldos durante los cuatro meses en cuestión, éste no tiene derecho a recobrarlos. Sostienen que de

otro modo el demandante se enriquecerá injustamente; que de existir alguna reclamación por tales sueldos, la misma pertenecería a la corporación que pagó al demandante sin recibir servicios de éste; y que un demandado sólo viene obligado a poner al demandante hasta donde sea posible en la condición en que estaría de no haber ocurrido el acto torticero. De acuerdo con esto, si bien no citan casos que concurran con ellas, las demandadas nos piden que revoquemos los casos de *Reyes* v. *Aponte*, 60 D.P.R. 890, 896; *Pereira* v. *Commercial Transport Co.*, 70 D.P.R. 641, 646, que son contrarios a su contención.

Luego de reexaminar la cuestión, nos adherimos a lo que resolvimos en los casos de *Reyes* y *Pereira*. Reconocemos que de ordinario la ley concede compensación, y nada más, en casos de lesiones personales. Pero la regla general, con la cual convenimos, es que ". . . un lesionado puede usualmente recobrar en total de una persona que le cause daños, independientemente de cualquier suma que pueda obtener de una 'fuente colateral' que no tenga conexión con dicha persona." *Hudson* v. *Lazarus*, 217 F.2d 344, 346 (C.A. D.C., 1954); *Campbell* v. *Sutliff*, 214 N.W. 374 (Wis., 1927); *Clark* v. *Berry Seed Co.*, 280 N.W. 505 (Iowa, 1938); *Restatement, Torts*, sec. 920, *Comment e*; Nota, 63 Harv. L. Rev. 330. *Contra, Daniels* v. *Celeste*, 21 N.E.2d 1 (Mass., 1939). Un patrono que paga a un empleado el sueldo de éste aun cuando el empleado no preste servicios a cambio de ellos, en efecto lo que le hace es una donación. Toda vez que la donación va dirigida a la persona lesionada y no al que causa el daño, sus beneficios deben ir al primero y no al segundo. *Restatement, Torts*, sec. 924, *Comment f*.([5])

---

([5]) El demandante declaró que "faltó" cuatro meses a "su trabajo" con motivo de sus lesiones. Las demandadas tienen derecho, de así elegirlo, al devolverse el caso al tribunal sentenciador de investigar si el demandante, no obstante el hecho de que "faltó" cuatro meses a "su trabajo", rindió todos o algunos de sus servicios corrientes a la corporación durante ese período. Bajo estas últimas circunstancias la sentencia a favor del demandante por pérdida de sus sueldos se reduciría en tanto las corporaciones le pagaron a cambio de servicios prestados y no como donación.

La otra cuestión levantada por la apelación del demandante es si el tribunal sentenciador erró al no concederle honorarios de abogado. Creemos que la norma de conceder honorarios de abogado en casos adecuados, tanto en los tribunales sentenciadores como en éste, es deseable, y según hemos indicado en casos recientes nos proponemos ponerla en vigor con firmeza. Sin embargo, en vista de que las cuestiones legales aquí envueltas son un poco novel, no podemos decir que el tribunal sentenciador abusara de su discreción al no concederle honorarios de abogado en este caso.

*La disposición de la sentencia concediendo al demandante la suma de $7,800 será confirmada, y se devolverá el caso para ulteriores procedimientos consistentes con esta opinión sobre la cuestión de compensación por la pérdida de sueldos.*

El Juez Asociado Sr. Belaval concurre con el resultado.