Cordero, Juez Ponente
*1111 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de apelación se nos solicita revisar una sentencia dictada por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Bayamón, en la cual se impuso responsabilidad en una acción de daños y perjuicios a la demandada-apelante, K-mart, Inc., y a la Compañía de Seguros X por un total de $26,000.
El sábado 5 de marzo de 1994, los demandantes-apelados, Luis Ignacio Rivera Díaz ("Rivera") y su esposa Silvia Enid Morales, se personaron a las facilidades de la parte demandada-apelante, K-mart Corp. ("K-mart"), en el Centro Comercial de Rexville, Bayamón, Puerto Rico.
Una vez dentro de las facilidades de la tienda, Rivera procedió a tomar un carrito para cargar sus artículos de compra. En la parte superior de dicho carrito colocó a su hija y caminó hacia el área de ferretería. En dicha área estaban presentes otros clientes y un empleado de la tienda. Entre las góndolas de este departamento, y mientras empujaba el carrito de compras, Rivera cayó de espaldas luego de resbalar en un líquido amarillo tenue que se encontraba en el piso del establecimiento. El líquido, según la percepción de Rivera y de acuerdo a la prueba desfilada en el tribunal de instancia, era un "freeze" o "frozen" que estaba derretido en el suelo. En el área donde ocurrió el accidente no había ningún rótulo o aviso de precaución.
Después de ocurrir el accidente, Rivera fue auxiliado por el empleado de la tienda que se encontraba entre las góndolas del departamento de ferretería. Este empleado se encontraba atendiendo a varios clientes en el área de las góndolas antes de ocurrir el accidente. Más tarde, Rivera fue llevado al área de servicio al cliente, donde se preparó un informe del accidente y fue referido al Hospital San Pablo. Allí le tomaron placas y se le recetaron medicamentos. Como consecuencia de los eventos descritos, Rivera comenzó a sufrir dolores de espalda, los cuales le afectaron su desempeño en el trabajo y en su vida diaria.
Ante este cuadro consultó al Dr. William Micheo, quien luego de evaluarlo le ordenó terapias físicas y un medicamento conocido como "Relafen". Rivera recibió un total de diecinueve (19) terapias físicas y, además, se le ordenó que practicara unos ejercicios para la espalda. El Dr. Micheo declaró que allá para agosto de 1994, pudo detectar una deformación como "espuelón" o artritis, y que por tal motivo le ordenó al paciente realizarse un "4C.T. Sean". Estas placas revelaron que Rivera sufrió por razón del accidente un esguince en la región lumbo sacral produciendo una herniación discal a nivel L5 SI. Dado el cuadro clínico reflejado en este examen, Rivera tuvo que continuar recibiendo tratamiento. Tiempo después, Rivera fue evaluado por el Dr. Juan Llompart, perito ortopeda, quien diagnosticó la misma condición descrita anteriormente; catalogó sus consecuencias en un impedimento físico de 15% en las funciones fisiológicas generales.
*1112 Entre sus conclusiones de hecho, el tribunal de instancia determinó que Rivera en la actualidad tiene 34 años de edad y se desempeña como vendedor de "Seaboard Bakery"', que su trabajo lo obliga a llevar a cabo rutas para la distribución de los productos de su compañía; que sus funciones de trabajo le requieren que surta las góndolas de los productos de su patrono, lo cual lo obliga a estar en cuclillas; que los dolores de espalda, resultado del accidente, se agravan por razón de sus funciones; que Rivera se siente muy triste al no poder ayudar a su esposa en los quehaceres del hogar; y que ella, como consecuencia del accidente, ha tenido que llevar a cabo tareas que generalmente le correspondían a su esposo.
También, el tribunal de instancia concluyó que el accidente se debió única y exclusivamente a la negligencia de los demandados al no mantener limpio el piso del área donde ocurrió el accidente, máxime cuando en dicha área se encontraba personal de los demandados y éstos no aportaron prueba alguna de que no tuvieran oportunidad de corregir la situación. Que por el contrario, la prueba no rebatida establece que hubo la oportunidad de corregir la situación. Como consecuencia, dicho tribunal declaró con lugar la demanda condenando a K-mart, a indemnizar a Rivera con la cantidad de $15,000.00 por concepto de los daños físicos sufridos y $5,000.00 por concepto de daños morales y angustias mentales y a su esposa, Silvia Enid Morales, $3,000.00 por concepto de daños morales y angustias mentales. Además se le impuso el pago de las costas, gastos y la suma de $3,000.00 en concepto de honorarios de abogado. No conforme, K-mart recurre ante nos mediante el recurso de apelación.
II
Discutiremos inmediatamente los errores señalados en este recurso de apelación.

"PRIMER ERROR: ERRO EL TRIBUNAL DE PRIMERA INSTANCIA EN IMPONERLE RESPONSABILIDAD AL APELANTE CUANDO NO HUBO PRUEBA DE CONOCIMIENTO PREVIO, SEGUN DISPONE LA JURISPRUDENCIA APLICABLE EN LOS CASOS DE DAÑOS Y PERJUICIOS POR CAIDAS EN ESTABLECIMIENTOS COMERCIALES.

SEGUNDO ERROR: ERRO EL TRIBUNAL DE PRIMERA INSTANCIA EN LAS DETERMINACIONES DE HECHOS EN LA SENTENCIA Y LAS INDEMNIZACIONES DE $15,000.00 POR DAÑOS FISICOS SUFRIDOS POR EL CO-DEMANDANTE APELADO; LA DE $5,000.00 POR DAÑOS MORALES Y ANGUSTIAS MENTALES; LA SUMA DE $3,000.0 POR LOS DAÑOS MENTALES A LA CO-DEMANDANTE APELADA SILVIA ENID MORALES, SON EXCESIVAS Y NO GUARDAN PROPORCION CON LOS DAÑOS PROBADOS.

TERCER ERROR: LA APELANTE NO INCURRIO EN TEMERIDAD AL DEFENDERSE DE LA ACCION, POR LO QUE ES ERRONEO CONDENARLE AL PAGO DE $3,000.00 EN CONCEPTO DE HONORARIOS DE ABOGADO."

III
En cuanto al primer error señalado, el Art. 1802 del Código Civil, 31 L.P.R.A. § 5141, dispone que para que prospere una causa de acción en daños y perjuicios, el demandante tiene que probar la existencia de un acto u omisión negligente, el daño sufrido y el nexo causal entre el daño sufrido y el acto culposo y negligente. Colón Miranda v. Plaza Las Américas, Inc., _ D.P.R. _ (1994), 94 J.T.S. 84, pág. 12016; Hernández v. Fournier, 80 D.P.R. 93, 96 (1957). En materia de caídas y reclamaciones extracontractuales al amparo de este artículo nuestro Tribunal Supremo ha establecido un deber de cuidado a los operadores de establecimientos comerciales. En Cotto v. C.M. Ins, Co., 116 D.P.R. 644, 660 (1985), el Tribunal Supremo de Puerto Rico señaló que:

"....una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro."

Nuestro Tribunal Supremo ha impuesto responsabilidad al dueño de un establecimiento cuando se ha probado que éste no ha ejercido el cuidado debido para que el lugar sea seguro para el visitante. A *1113 esos efectos, véanse Cotto v. C.M. Ins. Co., supra; Aponte Betancourt v. Meléndez, 87 D.P.R. 652, 653 (1963); Weber v. Mejías, 85 D.P.R. 76, 79-80 (1962); Santaella Negrón v. Licari, 83 D.P.R. 887, 892-893 (1961); Goose v. Hilton Hotels, 79 D.P.R. 523, 528 (1956) y Gutiérrez v. Bahr, 78 D.P.R. 473, 474 (1955). Además, para que prospere una acción por daños y perjuicios contra el dueño de un establecimiento comercial por causa de una caída, es menester que la condición de peligrosidad sea de conocimiento de este último o que la misma pueda imputársele y esta prueba le corresponde al demandante. Cotto v. C.M. Ins. Co., supra, pág. 651.
El tribunal de instancia en este caso determinó que K-mart no actuó razonablemente a tiempo para eliminar del suelo la condición de peligrosidad que causó la caída de Rivera, y así evitar los daños sufridos por éste. K-mart cuestiona dicha conclusión del tribunal de instancia y nos argumenta en su escrito que el foro a quo erró al imponer responsabilidad cuando no se pasó prueba sobre dicho conocimiento previo.
La Regla 10 (h) de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(h) establece que:

"Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Se entiende por evidencia directa aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna, y que de ser cierta demuestra el hecho de modo concluyente. Se entiende por evidencia indirecta o circunstancial aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual en unión a otros hechos ya establecidos puede razonablemente inferirse el hecho en controversia."

De acuerdo a esta Regla 10 (h) existen dos clases de prueba reconocidas y admitidas en los tribunales de justicia. Una se conoce como evidencia directa y la otra como evidencia indirecta o circunstancial. "La evidencia circunstancial o indirecta es aquella que prueba un hecho del cual surge una inferencia de la existencia de otro." Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, 2da ed., San Juan, Col. de Abog. de P.R., 1977, pág. 14. Véase además, E. Chiesa, Práctica Procesal Puertorriqueña, Publicaciones J.T.S., San Juan, Vol. I, pág. 20 (Supl. 1993). "Una inferencia es la deducción que de los hechos probados hace en su discernimiento el juez o el jurado, sin que al efecto medie mandato de la ley.... Es la inferencia —deducción que hace en su discernimiento el juez o el jurado— que surge de una serie de hechos probados. Para que se pueda dar por probado un hecho mediante evidencia circunstancial, es necesario que exista una relación racional entre el hecho básico probado y el hecho inferido." R. E. Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, Eugenio María de Hostos, Mayaguez, 1994, pág. 108. Según jurisprudencia norteamericana, una inferencia es una determinación de un hecho no presentado a través de evidencia directa pero que mediante un proceso lógico y razonable de otro hecho o grupo de hechos establecido por la evidencia se puede deducir ese hecho. Computer Identics Corp. v. Southern Pacific Co., 756 F.2d 200, 204 (1985); State v. Hyde, 682 S.W.2d 103, 106 (1984).
A un tribunal de instancia aquilatador de la prueba, le es permitido llegar a aquellas conclusiones e inferencias razonables que estén justificadas a base de su propia experiencia y que surjan de los hechos que considere o estime probados. Nuestro Tribunal Supremo ha resuelto, en Soc. Legal de Gananciales v. E.L.A., 103 D.P.R.. 876, 879 (1975), que:

"Reconociendo las dificultades prácticas que envuelve el probar un hecho con certeza matemática, la Ley de Evidencia permite el uso de prueba indirecta; esto es, probar el hecho en controversia, probando otros distintos del cual aquél se puede lógicamente inferir."

Sobre el particular, es norma reiterada que el tribunal de instancia está en mejor posición de aquilatar la pmeba, pues goza de la oportunidad de ver y escuchar directamente a los testigos. Pueblo v. Ruiz Ramos, 125 D.P.R. 365, 400 (1990). Este foro ha revisado con detenimiento tanto la transcripción de evidencia como los alegatos de las partes, y hemos llegado a la conclusión de que en el presente caso quedó demostrado a través del testimonio directo de Rivera que en el área del accidente había presente un empleado de K-mart. Además, Rivera pudo observar alrededor de otros diez a doce empleados, aproximadamente, desempeñando sus labores dentro de la tienda. A base de esta prueba creída por el tribunal de instancia, éste concluyó que existía una condición de peligrosidad e infirió a base de la prueba desfilada que dicha condición le era o debía serle de *1114 conocimiento a los empleados de K-mart.
Este foro apelativo coincide con esta determinación basándose en que una vez se probó que efectivamente estaba presente un empleado de K-mart en el lugar de los hechos, es razonable y lógico inferir que dicho empleado tenía o debió tener conocimiento del líquido tenue que permanecía en el suelo, correspondiente a la góndola en que realizaba sus labores. Además, no se presentó prueba alguna tendiente a demostrar un sistema de vigilancia y mantenimiento adecuado establecido por K-mart con el fin de evitar este tipo de situación y así disminuir cualquier condición de peligrosidad. Colón Miranda v. Plaza Las Américas, Inc., supra, pág. 12017. (Voto concurrente del Juez Fuster Berlingeri.)
IV
Alega K-mart en su segundo señalamiento de error que incidió el tribunal de instancia al conceder las indemnizaciones por ser excesivas y no guardar proporción con los daños probados. El tribunal de instancia valorizó en $15,000 los daños físicos y $5,000.00 los daños morales y angustias mentales sufridos por Rivera, y en $3,000.00 los daños mentales causados a la co-demandante apelada Silvia Eníd Morales.
Sobre este particular nuestro Tribunal Supremo, en Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985)señaló que:
"No hay duda de que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas, Valldejuli Rodríguez v. A.A.A., 99 D.P.R. 917 (1971), Urrutia v. A.A.A., supra, y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritoro el que se modifiquen las mismas." Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978).
La gestión judicial de estimación y valoración de daños es una difícil para la cual no existe un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Rodríguez Cancel, supra. Dicha función ".... descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y conciencia humana." Urrutia v. A.A.A., 103 D.P.R. 643, 647 (1975).
Por lo tanto, a pesar de que personas haciendo buen uso de su juicio valorativo, pueden diferir sobre la cuantía fijada, no creemos que la misma justifique nuestra intervención. Este foro apelativo ha examinado las determinaciones de hechos que a esos efectos realizara el Tribunal de Primera Instancia. Las mismas están más que sostenidas por la prueba presentada y nos llevan a la conclusión de que procede la confirmación de las sumas de dinero concedidas, ya que las mismas no se pueden considerar "exageradamente altas".
V
Por último, el apelante cuestiona el que el foro sentenciador le haya impuesto el pago de los honorarios de abogado por haber incurrido en temeridad.
La Regla 44.1 (d) de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, dispone que el tribunal deberá imponer en su sentencia honorarios de abogado en el caso en que una parte haya procedido con temeridad. La acción que amerita la condena de honorarios de abogado es cualquiera que haga necesaria un pleito que se pudo evitar, que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718-719 (1987). Además, el Tribunal Supremo en Fernández señaló que: ”[e]l propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e *1115 insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito."
El Tribunal Supremo de Puerto Rico también ha señalado que la acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar; McCormick v. Valles, 55 D.P.R. 226, 233 (1939), que lo prolongue innecesariamente; Stella v. Bonilla, 65 D.P.R. 542 (1946); Ortiz v. Viera, 59 D.P.R. 358 (1941), o que produzca la necesidad de que otra parte incurra en gestiones evitables. San Antonio v. Jiménez & Fernández, Sucrs., 63 D.P.R. 215, 220 (1944). Además, ese mismo tribunal ha resuelto que existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; Rodríguez Cancel v. A.E.E., supra, si se defiende injustificadamente de la acción; Montañez Cruz v. Metropolitan Cons. Corp., 87 D.P.R. 38 (1962); o si una parte niega un hecho que le consta es cierto. Abréu Román v. Rivera Santos, 92 D.P.R. 325 (1965).
La norma prevaleciente es que los honorarios de abogado se conceden por temeridad y dependen de la discreción del tribunal sentenciador, Asociación de Condóminos v. Trelles Reyes, 120 D.P.R. 574, 579 (1988), y no se revisará una determinación de temeridad a menos que se demuestre que se ha cometido un abuso de discreción. Montañez Cruz v. Metropolitan Cons. Corp., supra, pág. 40.
Tomando en consideración las normas de derecho antes expuestas, pasemos a analizar la actuación del juez de instancia al imponerle a la apelante el pago de la suma de $3,000.00 en concepto de honorarios de abogado por temeridad.
En primer lugar, en la contestación a la demanda K-mart negó todos los hechos de la demanda, a pesar de tener conocimiento de la ocurrencia del evento por haber preparado sus propios empleados un informe sobre los hechos. No conforme con negar todos los hechos, presentó una moción alegando que la causa de acción estaba prescrita, a pesar de conocer lo incorrecto de dicho hecho. En el informe de conferencia con antelación al juicio volvió K-mart a negar la negligencia y los grados de incapacidad. Sin embargo, en la vista en su fondo, la prueba pericial del propio K-mart estableció que los daños ocasionados a Rivera eran equivalentes a un 17% de incapacidad. Más aún, en la propia relación de hechos ante este foro se establecen datos contrarios a la transcripción narrativa de la prueba.
Una vez examinado el récord ante nos, determinamos que la temeridad en el caso de autos es evidente y coincidimos con la sentencia emitida por el tribunal de instancia por haber encontrado apoyo en el caso de autos para sostener la determinación discrecional de dicho tribunal.
VI
Por los fundamentos antes expresados, se confirma la sentencia apelada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA67
1. Véase Transcripción, pág. 57; Apéndice, pág. 118.
2. El término "espuelón" es una expresión utilizada para artritis o espondilosis. Véase la pág. 29 de la Transcripción Certificada de la Vista en su Fondo. Recurso de Apelación, Apéndice, pág. 90.
3. Véase Transcripción, pág. 70; Apéndice, pág. 131.
4. Véase Transcripción, pág. 139; Apéndice, pág. 200.