HARRY J. DWORKIN, demandante y recurrido, *v.* SAN JUAN INTERCONTINENTAL HOTEL CORP., demandada y recurrente.

Número: R-64-56      Resuelto: 18 de diciembre de 1964

*Rivera Zayas, Rivera Cestero & Rúa,* y *Víctor Rodón Elizalde,* abogados de la recurrente; *F. Fernández Cuyar,* y *Amancio Arias Cestero,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

"El día 12 de febrero de 1959 a las 10:30 de la mañana aproximadamente, siendo el demandante huésped de la demandada, sufrió un accidente en el cual su mano derecha resultó lesionada," lee el primer párrafo de la demanda mediante la cual se inició el presente pleito. La curiosa versión sobre la forma en que ocurrió el accidente se expone en las determinaciones fácticas del tribunal de instancia que copiamos a continuación:

"Allá para febrero de 1959 la clase de 1932 de la referida Universidad decidió celebrar un seminario legal post-graduado en esta Ciudad de San Juan y todos los miembros de dicha clase, luego de llegar a Puerto Rico, se hospedaron en el hotel San Juan Intercontinental, propiedad de la empresa demandada, ocupando el demandante y su esposa la habitación 904 en dicho hotel.

"La referida habitación estaba ubicada al final de un largo pasillo, en la esquina sureste del hotel, y estaba provista de una puerta que daba entrada del pasillo hacia dicho cuarto y de otra puerta que proveía salida del cuarto hacia una terraza.

"Por razones que no aparecen claramente de la evidencia, en el referido pasillo habían [*sic*] corrientes de aire que a veces eran fuertes y a veces suaves.

"En la noche de febrero 12, 1959 aproximadamente a las 10:30 de dicha noche, el demandante y su esposa regresaron a su cuarto después de asistir a una sesión o reunión del seminario legal que se venía llevando a cabo en el hotel. El demandante, al llegar frente a la puerta de su cuarto, con su mano derecha introdujo la llave en la cerradura y abrió la puerta, empujándola luego con la mano izquierda hasta quedar abierta a mitad, sacó la llave de la cerradura y cuando iba a entrar al cuarto y

*debido a una súbita corriente fuerte de aire, la puerta se cerró violentamente aprisionando la mano derecha del demandante contra el marco de la puerta y causándole lesiones muy fuertes en los dedos índice y medio de dicha mano derecha,* inclusive hemorragia intensa debajo de las uñas de ambos dedos." (Bastardillas nuestras.)

Se estableció además que la puerta que aprisionó los dos dedos de la mano derecha del demandante no estaba equipada con ningún artefacto o instrumento para retener o demorar su movimiento al cerrarse.

A base de tales determinaciones se concluyó que fue precisamente la falta del aparato retenedor la causa de los daños ocasionados ya que, bajo las condiciones prevalecientes en el pasillo que conducía a la habitación ocupada por el demandante, un razonable grado de cuidado de parte de la empresa del hotel requería que se hubiese tomado tal precaución. En consecuencia dictó sentencia condenando a la parte demandada a resarcir al reclamante la suma de $3,045.00 que incluye $2,000.00 por ingresos dejados de percibir y $45.00 de gastos de medicina.

Decidimos revisar la sentencia.

■ A poco que se examine la conclusión de derecho que dio margen a la sentencia, se observará que la responsabilidad impuesta a la parte demandada se funda en su supuesta falta de previsión. Repetidamente hemos reconocido ese criterio como base para la responsabilidad extracontractual. *Molina Rodríguez* v. *Caribe Motors Corp.,* 90 D.P.R. 458 (1964); *Pabón Escabí* v. *Axtmayer,* 90 D.P.R. 20 (1964); *Cruz Costales* v. *E.L.A.,* 89 D.P.R. 105 (1963); *Weber* v. *Mejías,* 85 D.P.R. 76, 80 (1962); *Ortiz Fuentes* v. *Presbyterian Hospital,* 83 D.P.R. 308 (1961); *Baralt et al.* v. *E.L.A.,* 83 D.P.R. 277, 283–284 (1961). Sin embargo, ello no quiere decir que una persona esté obligada a prever todos los posibles riesgos que puedan concebiblemente estar envueltos en una determinada situación, pues prácticamente se convertiría entonces en una responsabilidad absoluta, similar a la de un

asegurador. (¹) En *Hernández* v. *Gobierno de la Capital*, 81 D.P.R. 1031, 1038 (1960), expusimos el mismo concepto en estas palabras: "El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad . . . sino a aquél que es probable que suceda y que llevaría a una persona prudente a anticiparlo." Véanse, además, *Lugo Pérez* v. *Santo Asilo de Damas*, 89 D.P.R. 247 (1963); y, Harper y James, *The Law of Torts* (ed. 1956), § 20.5; Prosser, *Law of Torts* (2a. ed. 1955), págs. 252 y ss.

■ En cuanto al punto específico de la necesidad de instalar retenedores en las puertas para evitar daños a invitados, parroquianos, huéspedes o terceras personas, son escasas las decisiones de tribunales de Estados Unidos. En su mayoría, bien se trata de puertas giratorias (*swinging doors*), que por su propia naturaleza requieren precauciones especiales que no es razonable exigir en el caso de puertas corrientes, *Brown* v. *Lutzky*, 154 A.2d 125 (D.C. 1959); *McAdoo* v. *Autenreith's Dollar Stores*, 109 A.2d 156 (Pa. 1954); *Sockwell* v. *Lucas & Jenkins*, 32 S.E.2d 201 (Ga. 1944); *Dolan* v. *Growers Outlet*, 26 A.2d 788 (Conn. 1942), o de situaciones en que participa una causa interventora mediante la realización de un acto negligente, (²) *Broyles* v. *Speer*, 51 A.2d 391 (Pa. 1947); *Boyle* v. *Neisner Bros.*, 87 S.W.2d 277 (Mo. 1935); *Dolan* v. *Callender, McAuslan & Troup Co.*, 58 Atl. 655 (R.I. 1904). No obstante, puede deducirse que no se favorece tal exigencia. En *Jacob* v. *City of Pittsburgh*, 198 Atl. 639 (Pa. 1938), una puerta de acero que conducía a las duchas de una piscina le atrapó un dedo a un menor al ser cerrada por otros niños que le precedían. Al resolver que no se había incurrido en negligencia, se expresó que desde luego un retenedor hubiese

---

(¹) Específicamente, hemos resuelto que un hotel no es un asegurador de sus huéspedes, y que sólo viene obligado a ejercer cuidado razonable para la protección y seguridad de éstos. *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20 (1964); *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956).

(²) En la jurisprudencia puertorriqueña, véase, *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961), *cert.* denegado, 369 U.S. 852 (1962).

evitado el peligro, pero que el riesgo de causar daños era tan mínimo como para hacer irrazonable el que se requiriera que la puerta estuviese dotada de dicho mecanismo. En sentido parecido se pronuncia *White* v. *Board of Education of New York*, 293 N.Y.S. 70 (1937), en que la reclamación se fundaba en la ausencia de tal dispositivo en una puerta de acceso a una escuela. Afirmóse que el accidente probablemente no hubiese ocurrido si la puerta hubiese estado provista de un retenedor, pero que la mera ocurrencia del accidente no indicaba que debió anticiparse, y termina diciendo que "Por innumerables generaciones los niños de escuela han pasado, sin que hayan ocurrido accidentes, a través de puertas desprovistas de retenedores." *Ten Broeck* v. *Deinhardt*, 105 N.Y.S. 59 (1907) advierte que las puertas sin retenedores no son intrínsecamente peligrosas. Cf. *Buzzell* v. *R. H. White Co.*, 107 N.E. 385 (Mass. 1915), en relación con la responsabilidad por falta de dispositivo para controlar la velocidad en puertas giratorias (*revolving doors*).

Quizás la situación más similar, y por coincidencia la más reciente de que tengamos noticia, fue considerada en *McCallum* v. *Brodsky*, 158 So.2d 589 (Fla. 1963). Se le imputó a los demandados el uso negligente de una puerta en su establecimiento de motel que le atrapó unos dedos a un menor, hijo de unos huéspedes, que se cerró debido a una ráfaga de viento. La puerta no estaba provista de retenedor, sino meramente de una cadena en su extremo superior para evitar que batiera contra la pared exterior del edificio. Se desestimó la reclamación, citándose los casos de *Dolan, Ten Broeck, Jacob* y *Sockwell*, supra, por no aducir una causa de acción.

■ En el presente caso se demostró que la puerta de entrada a la habitación que ocupaba el actor no tenía desperfecto alguno, estaba nivelada y giraba eficientemente en su quicial, y sus herrajes y goznes eran adecuados. No se estableció que la empresa estuviese advertida de ningún riesgo

especial que presentara la presencia de corrientes de aire en los pasillos de los distintos pisos del hotel, y mucho menos de la acción de "una súbita corriente," o de una "ventolera por el corredor que no era continua," como la describió el propio demandante. Consideradas esas circunstancias conjuntamente con las que estimó probadas el tribunal de instancia que hemos transcrito al comienzo de esta opinión, no estamos satisfechos de que, aplicando el criterio de previsibilidad, la situación fuera de tal naturaleza que requiriera la instalación de mecanismo para retardar el cierre en las puertas de entrada de las habitaciones. Significativo es que las que daban acceso a las terrazas del exterior del edificio, y que están expuestas a la acción de los vientos que con frecuencia soplan en el litoral en donde ubica el hotel, están provistas de retenedores. Sin duda ello obedece a la probabilidad razonable de que un cierre súbito cree una situación de peligro. Pero como hemos dicho, la situación en cuanto a las puertas de entrada es completamente distinta.

En vista de la conclusión a que hemos llegado sobre la improcedencia de la acción estamos relevados de discutir los otros errores que fueron señalados.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 13 de febrero de 1964, y se desestimará la demanda, con imposición de costas, incluyendo las incurridas en el presente recurso.*