Mirelsa Colón García y otros, demandantes y recurridos, *v.* Toys "R" Us, Inc., demandado y recurrente.

Número: RE-94-28          Resuelto: 10 de noviembre de 1995

*Iván M. Fernández* y *Elí B. Arroyo*, abogados de la parte recurrente; *Francisco Vázquez* y *Juan M. Ponce Fantauzzi*, abogados de la parte recurrida.

## SENTENCIA

Habiéndose examinado los alegatos de las partes, la transcripción y exposición narrativa de la prueba y los autos originales del caso, y conforme con las disposiciones del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, así como la jurisprudencia aplicable de este Tribunal, *se revoca la sentencia recurrida dictada por el entonces Tribunal Superior, Sala de Carolina (Hon. Magali Hosta de Modesti, Juez) el 15 de octubre de 1993 y, en su lugar, se dicta otra que declara sin lugar la demanda presentada en el caso de epígrafe.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Corrada Del Río emitió una opinión de conformidad, a la que se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Rebollo López y la Juez Asociada Señora Naveira de Rodón concurrieron sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente en parte

y disidente en parte. El Juez Asociado Señor Negrón García disiente al expresar que "[l]a demandada recurrente Toys "R" Us, según testimonio de su único testigo, el gerente Jorge Negrón Martínez, 'sabí[a] que podían ocurrir accidentes con esa puerta abriendo hacia el pasillo'. E.N.P., pág. 9. Por tal razón, pusieron dos (2) barandas. Además, eran conscientes de que aun con las dos (2) barandas instaladas, una persona podría estar parada frente a la puerta y, al ésta abrir automáticamente, causar un accidente. A tal efecto, instalaron en la puerta un detector de movimiento con el propósito de que 'la puerta no abr[iera] automáticamente si alguien est[aba] saliendo y en ese momento est[aba] pasando alguien al frente'. Íd., pág. 8. Sin embargo, debido a que el detector es de movimientos, no sirvió para captar la presencia del menor *detenido*. En vista de que la demandada recurrente Toys "R" Us previó que, aun con las barandas, podría ocurrir un accidente y que la instalación del censor no era suficiente, incurrió en responsabilidad. Ahora bien, la demandante recurrida Mirelsa Colón García aceptó 'que había ido antes a la tienda una vez, se imagina que sí fue con el nene'. Además, 'había salido por la puerta de salida' que es objeto de este accidente. Íd., pág. 7. Conocía, pues, que la puerta abría hacia afuera y no tomó las precauciones adecuadas para evitar el accidente de su hijo. Están presentes los elementos de negligencia comparada imputables a ella". El Juez Asociado Señor Hernández Denton emitió una opinión disidente.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión de conformidad del Juez Asociado Señor Corrada Del Río, a la que se une el Juez Presidente Señor Andréu García.

El recurso ante nos cuestiona la apreciación de la prueba que hiciera el tribunal de instancia (Hon. Magali Hosta Modesti, Juez) para determinar negligencia en un caso de daños y perjuicios. Cuestiona, además, la valorización de los daños hecha por dicho foro y la imposición de honorarios de abogado. Por las razones que expondremos a continuación, concluimos que los errores señalados fueron cometidos y procedemos a revocar la sentencia recurrida.

I

Los hechos incontrovertidos en este caso se relatan a continuación.

La Sra. Mirelsa Colón García, por sí y en representación de su hijo menor Carlos Colón Colón, presentó una demanda por daños y perjuicios en el Tribunal Superior, Sala de Carolina. Los hechos que dieron origen a la demanda surgen de la sentencia del tribunal de instancia y de los escritos de las partes.

El 18 de diciembre de 1991, aproximadamente a las 5:00 de la tarde, la señora Colón García y su hijo menor de dos (2) años, Carlos Alberto, acompañados de otros familiares, se disponían a entrar al establecimiento Toys "R" Us de Carolina para comprar unos juguetes. Al pasar frente a la puerta de salida, ésta se abrió de súbito, propinándole un fuerte golpe al menor Carlos Alberto, que le pinchó el dedo grueso del pie izquierdo y lo laceró con la parte inferior filosa de la puerta de metal.(1) La parte demandante alegó

---

(1) El acceso para entrar y salir del establecimiento lo constituyen dos (2) puertas contiguas ubicadas en una esquina en el extremo suroeste del edificio. Dichas puertas están rotuladas "salida" y "entrada" y operan automáticamente mediante un

que el accidente se debió a la negligencia exclusiva de la parte demandada.([2])

El tribunal de instancia dictó sentencia que declaró con lugar la demanda y condenó a Toys "R" Us a pagar al menor Carlos Alberto la suma de veinte mil dólares ($20,000) y a la señora Colón García la suma de diez mil dólares ($10,000). Le impuso, además, mil dólares ($1,000) en concepto de honorarios de abogado.([3])

Inconforme con el resultado, la parte demandada recurrente acude ante nos mediante un recurso de revisión. Emitimos una orden para que los demandantes recurridos mostraran causa por la cual no deba expedirse el auto solicitado y revocarse la sentencia.

Luego de completarse el trámite procesal de perfeccionamiento del recurso, habiendo comparecido la parte demandante recurrida y con el beneficio de los documentos que obran en los autos, podemos proceder a resolver las controversias y cuestiones de derecho planteadas.

En su recurso de revisión, la demandada recurrente señala la comisión de los siguientes cinco (5) errores por parte del tribunal de instancia:

PRIMERO: No se alegó en la demanda ni se probó en el juicio que la demandada compareciente hubiese incurrido en culpa o negligencia alguna por lo que el tribunal de instancia debió estimar la defensa afirmativa invocada al efecto.

SEGUNDO: El criterio de previsión en que se fundamenta la

---

dispositivo electrónico. La puerta de entrada abre hacia el interior y la de salida hacia el exterior.

([2]) La parte demandada contestó la demanda y presentó como defensa afirmativa que el accidente se debió a la negligencia combinada del menor y de su madre. Presentó, además, reconvención contra la señora Colón García para que le respondiese por cualquier suma de dinero que la parte demandada le tuviese que pagar al menor.

([3]) Copia de la sentencia fue archivada en autos y notificada el 3 de noviembre de 1993. La parte demandada presentó una Moción Solicitando Determinaciones Adicionales y una Moción de Reconsideración. Ambas fueron declaradas "No Ha Lugar" mediante una resolución archivada en autos y notificada el 3 de diciembre de 1993.

sentencia es contrario al derecho prevaleciente según expuesto por la jurisprudencia de este Tribunal.

TERCERO: La sentencia recurrida tiene el efecto de convertir a la compareciente en aseguradora de sus parroquianos lo cual es contrario a la jurisprudencia de este Tribunal.

CUARTO: Las indemnizaciones de $20,000.00 concedida al menor y de $10,000.00 a su madre son excesivas y no guardan proporción con los daños probados.

QUINTO: La demandada no incurrió en temeridad al defenderse de la acción por lo que es erróneo condenarle al pago de $1,000.00 de honorarios de abogado. Solicitud de revisión, pág. 4.

## II

Por estar íntimamente relacionados, discutiremos en conjunto los primeros tres (3) señalamientos de error.

Este Tribunal ha expresado, reiteradamente, que el dueño u operador de un establecimiento abierto al público " 'no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección' ". *Goose v. Hilton Hotels*, 79 D.P.R. 523, 527 (1956). Se ha impuesto, pues, responsabilidad al operador del establecimiento público en casos que encerraban *"condiciones peligrosas existentes* dentro de los establecimientos correspondientes, los cuales eran *de conocimiento de los propietarios o su conocimiento podía imputársele a éstos"*. (Énfasis en el original.) *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650 (1985).

Las alegaciones de negligencia de la demanda aparecen en los párrafos 5 y 7 que expresan, a tales efectos:

5. Al pasar los demandantes frente a la puerta de salida, ésta se abrió de súbito sin emitir señal o aviso de índole alguna que permitiera a las personas percatarse de ese suceso dando un fuerte golpe en el pie izquierdo al menor Carlos Alberto Colón causándole severos traumas, intensa profusión de sangre, inflamación, dolores internos y requiriendo asistencia médica inmediata.

7. La causa del referido accidente fue la única y exclusiva negligencia de la parte demandada por su falta de previsión en

mantener su establecimiento, y particularmente las puertas de entrada y salida de sus áreas circundantes, libre de condiciones de peligrosidad que evitaran daños a las personas que visitan el establecimiento comercial. Solicitud de revisión, pág. 5.

Examinadas las alegaciones del citado párrafo 5, debemos concluir que éstas son insuficientes para exponer una reclamación que justifique la concesión de un remedio. El hecho en sí de que la puerta automática abra sin emitir señal o aviso de índole alguna no es indicativo de negligencia.

Por otro lado, en cuanto a la falta de previsión en mantener su establecimiento, particularmente las puertas de entrada y salida y sus áreas circundantes, libre de condiciones de peligrosidad que eviten daños, ésta no se fundamenta por la prueba presentada.

La prueba de la parte demandante recurrida, sobre quien recae el peso de establecer sus alegaciones —*Vaquería Garrochales, Inc. v. A.P.P.R.*, 106 D.P.R. 799 (1978)— falló en demostrar que el área donde ocurrió el accidente fuese peligrosa y que la demandada recurrente hubiese incurrido en falta de previsión. Por ello, el tribunal de instancia debió estimar la defensa afirmativa que a tales efectos invocó la demandada recurrente en su contestación a la demanda. En *Cotto v. C.M. Ins. Co.*, supra, establecimos que no basta con alegar que una persona sufrió un accidente sino que, además, hay que alegar y probar que el accidente se causó por la culpa o negligencia de la demandada.

Las alegaciones de la demanda, en el caso ante nos, se encuentran huérfanas de expresiones que reflejen cuáles eran las condiciones peligrosas existentes en el establecimiento de la demandada recurrente, ni la prueba enmendó tales alegaciones, pues luego de examinada la transcripción de la prueba que obra en autos, entendemos que hay carencia total de prueba a tal efecto. Aquí, como en *Cotto v. C.M. Ins. Co.*, supra, pág. 652, "el tribunal de instancia no

tuvo ante sí prueba de índole alguna de dónde, ni tan siquiera, se pueda inferir que en el establecimiento en controversia existía una condición peligrosa; mucho menos, por lo tanto, prueba de que los demandados pudieran tener conocimiento de ella".

Sobre este particular la sentencia recurrida determinó que la demandada recurrente incurrió en negligencia *"por su falta de previsión* en mantener en su establecimiento, particularmente las puertas de entrada y salida de sus áreas circundantes, libre de condiciones de peligrosidad". (Énfasis suplido.) Apéndice, pág. 2. La sentencia no señala en qué consistían las "condiciones de peligrosidad" que la compareciente demandada recurrente debió anticipar o prever, aunque en sus conclusiones de derecho expone que "[u]na persona prudente [y razonable] pudo haber anticipado que el mecanismo electrónico para abrir y cerrar las puertas del local, podría causarle daños a un niño". Apéndice, pág. 5.

No desfiló ante el tribunal a quo prueba alguna de que la puerta de salida, o el sistema fotoeléctrico que la opera, crease condición de peligrosidad alguna que requiriese el deber de previsión que impone la sentencia recurrida. En efecto, la condición de previsibilidad en que se basa la sentencia recurrida está reñida con pronunciamientos previos de este Tribunal, que más adelante discutimos.

Sobre el aspecto de peligrosidad de las puertas operadas electrónicamente, se expresa en 62 *Am Jur 2d Premises Liability* Sec. 539, págs. 97–98 (1990):

*Sec. 539. Electrically operated doors*
Electric doors, generally activated by stepping on a floor mat or by a beam ("magic-eye"), are not in themselves unsafe, and the fact that a person is injured is not in itself proof of negligence, since it is well known that such doors may, by their nature, stroke or brush a person stepping into their path. But it may be negligence to maintain an activator mat which is narrow and not bordered by restraining railings, or which is partly concealed. (Escolios omitidos.)

La narración del accidente, según lo expresó en el juicio la madre del menor, fue la siguiente:

> El pasillo se reduce porque tiene una verja frente a la puerta; yo estaba frente a la puerta; estaba fuera de la verjita, en la puntita de las rejas. Lo que yo sentí fue un halón que el nene me dio; ese halón fue cuando la puerta lo impactó; fue un halón hacia abajo. La puerta no le golpeó el cuerpo, sino fue el pie.

La puerta pilló el dedo gordo del pie del menor, mientras éste trataba de entrar de frente por la puerta de salida. El accidente no habría ocurrido si la madre del menor lo hubiese mantenido bajo su control fuera del área bordeada por los rieles elevados (en adelante las barandas) colocados a ambos lados de la puerta.[4] En ese sentido precisa enfatizar que, cuando la puerta está abierta en su máxima extensión, ésta no sobresale del extremo de las barandas elevadas, por lo que quedan protegidas las personas que pasan de largo frente a la puerta y a riesgo únicamente quienes intenten penetrar de frente la puerta de salida. La conclusión final es que aquí se trata de un suceso desafortunado causado por la negligencia de la madre al no mantener a un niño de dos (2) años bajo su control y permitir que éste pretendiera entrar por la puerta de salida, no mediando culpa o negligencia de la parte demandada recurrente. Por ello, la sentencia recurrida debe ser revocada. Estando el niño protegido y custodiado por su madre, la demandada no estaba en posición de anticipar que el niño invadiría el área de la puerta de salida. Véase, por la semejanza que guarda con este caso, nuestras expresiones en *Ortiz v. Levitt & Sons*, 101 D.P.R. 290, 293 (1973), donde se expresa:

> La acción de la demandada manteniendo verjas protectoras a ambos lados del canal de desagüe ... y fijando letreros clara-

---

[4] Vease *Exhibit* 1, "A" y "B" de la demandada recurrente, Apéndice, pág. 20.

mente legibles ... *satisface las normas de previsibilidad* en protección de los niños que recorren esos predios. (Énfasis suplido.)

Procede, por ende, dictar sentencia en reconsideración declarando sin lugar la demanda por la ausencia total de negligencia imputable a la demandada. Apéndice, pág. 15.

En *Dworkin v. S.J. Intercont. Hotel Corp.*, 91 D.P.R. 584 (1964), se revocó una sentencia que impuso responsabilidad a un hotel cuando la puerta de la habitación donde se hospedaba el allí demandante le pilló un dedo. Expone allí este Tribunal, en cuanto al criterio de previsibilidad:

A poco que se examine la conclusión de derecho que dio margen a la sentencia, se observará que la responsabilidad impuesta a la parte demandada se funda en su supuesta falta de previsión. Repetidamente hemos reconocido ese criterio como base para la responsabilidad extracontractual. *Molina Rodríguez v. Caribe Motors Corp.*, 90 D.P.R. 458 (1964); *Pabón Escabí v. Axtmayer*, 90 D.P.R. 20 (1964); *Cruz Costales v. E.L.A.*, 89 D.P.R. 105 (1963); *Weber v. Mejías*, 85 D.P.R. 76, 80 (1962); *Ortiz Fuentes v. Presbysterian Hospital*, 83 D.P.R. 308 (1961); *Baralt et al. v. ELA*, 83 D.P.R. 277, 283–284 (1961). Sin embargo, ello no quiere decir que una persona esté obligada a prever todos los posibles riesgos que puedan concebiblemente estar envueltos en una determinada situación pues prácticamente se convertiría entonces en una responsabilidad absoluta, similar a la de un asegurador. En *Hernández v. Gobierno de la Capital*, 81 D.P.R. 1031, 1038 (1960), expusimos el mismo concepto en estas palabras: "El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad ... sino a aquél que es probable que suceda y que llevaría a una persona prudente a anticiparlo". Véanse, además, *Lugo Pérez v. Santo Asilo de Damas*, 89 D.P.R. 247 (1963); y; Harper y James, *The Law of Torts*, (ed.1956), [Sec.] 20.5; Prosser, *Law of Torts* (2a. ed. 2955), págs. 252 y ss. *Dworkin v. S.J. Intercont. Hotel Corp.*, supra, págs. 586–587.

La prueba en el caso de autos no estableció, como tampoco en *Dworkin v. S.J. Intercont. Hotel Corp.*, supra, págs. 588–589, "que la empresa estuviera advertida de ningún riesgo especial", y "mucho menos de la acción" (íd., pág. 589) del menor de colocarse en el área de la puerta de salida. La puerta, como hemos expuesto, está bordeada por

dos (2) barandas para evitar, precisamente, la situación que prevaleció en *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961), *cert.* denegado, 369 U.S. 852 (1962), puesto que allí la puerta abría hacia el pasillo "sin protección alguna para el que transita por el pasillo" (íd., pág. 902), mientras que aquí había barandas instaladas a cada lado de la puerta, que daba hacia el frente para permitir la salida de personas.

Sobre este particular, en *Rivera Matos v. Amador*, 86 D.P.R. 856, 861 (1962), expresamos que "los hechos probados demuestran que el demandado no podía razonablemente anticipar que el resultado de su conducta normal de cerrar [o abrir] la puerta" mediante un sistema electrónico "fuera el de lesionar al demandante, a menos que se pretenda sostener que ésta es inherentemente una actuación peligrosa y que siempre envuelve riesgos para terceras personas". Íd. Aquí, como en *Rivera Matos v. Amador*, supra, se impone también la revocación de la sentencia. En efecto, la prueba en el tribunal de instancia no reveló la existencia de hecho o circunstancia alguna de la cual la demandada pudiera prever o anticipar algún peligro en la puerta, *Nevárez v. Municipio de Vega Alta*, 101 D.P.R. 70, 75 (1973), ni de que la parte demandante pudiera sufrir un daño como consecuencia de la operación de la puerta electrónica, *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 20 (1987), sobre todo ante el hecho no controvertido de que la puerta estaba bordeada por barandas a cada lado. *Adviértase, además, que la madre del menor admitió que el menor intentaba entrar a la tienda por la puerta de salida.* A esos efectos, en el historial del accidente que dio el doctor Méndez Coll, su perito, dicha demandante describió el accidente, según surge de su deposición, en la forma siguiente:

cuando iban a entrar a la tienda, ... de momento el niño iba a entrar y de momento la puerta abrió hacia el niño ... hacia afuera .... Apéndice, pág. 104.

Esta admisión deja establecido que el niño estuvo en el

lado dispuesto para la salida, que es la puerta que abre hacia afuera. El accidente, en el caso de autos, se produjo por el descuido de la madre del menor al no controlar sus movimientos de tal forma que éste no se colocara en el área dentro de las barandas por la puerta que estaba claramente marcada con la señal de "salida" y que la madre del menor conocía, pues había visitado la tienda con anterioridad acompañada por el mismo menor.

Por haberse establecido que en el caso de autos la demandada recurrente no incurrió en negligencia, procede que revoquemos la sentencia recurrida y declaremos sin lugar la demanda.

— O —

Opinión concurrente en parte y disidente en parte emitida por el Juez Asociado Señor Fuster Berlingeri.

Concurro con la sentencia del Tribunal en cuanto a que el foro de instancia erró al determinar que el accidente en el caso de autos se debió a la negligencia *exclusiva* de la parte demandada, y en cuanto le impuso honorarios de abogado a ésta.

Resulta claro de los hechos del caso que la madre del niño golpeado por la puerta automática de salida de la tienda Toys "R" Us fue descuidada en la atención y vigilancia que debía darle al menor de dos años. La demandante admitió que había visitado la tienda antes y que conocía el funcionamiento poco usual de la puerta en cuestión. De haber actuado de manera enteramente responsable, es probable que el niño no hubiese intentado entrar a la tienda por la puerta de salida y se hubiera evitado el accidente.

Lo anterior no obstante, no puedo coincidir con el dictamen que se emite en la sentencia del Tribunal, que presupone que la tienda demandada está libre de toda responsabilidad en este lamentable accidente, por lo que disiento de éste.

Nótese que no se trata de una tienda cualquiera, sino de una que se especializa precisamente en *juguetes para niños*. Su clientela típica, por así decirlo, incluye inevitablemente a los chicos que acompañan a sus padres y familiares cuando éstos van a la tienda, para explorar y deleitarse con los artículos particulares que se venden allí, tan atractivos para los niños.

Nótese, además, que el accidente ocurrió *durante el período navideño*. Esta es para los niños la época más bulliciosa del año, cuando tiendas —como la de marras— intensifican sus seductores anuncios y campañas publicitarias para atraer precisamente a niños y adultos a sus establecimientos comerciales, y así aumentar sus ventas, aprovechándose de las tradiciones de regalar juguetes que tipifican al período navideño.

Nótese, finalmente, que el accidente resulta por razón del *inusitado funcionamiento de una puerta de salida automática*, que abre *hacia afuera* súbita e inesperadamente. El propio gerente de la tienda admitió que sabía "que podían ocurrir accidentes con esa puerta". Se trata de una puerta muy particular, distinta a las puertas eléctricas convencionales que abren lateralmente y no hacia afuera. Es una que evidentemente los niños de poca edad no conocen de ordinario, porque su funcionamiento poco usual está fuera de su limitada experiencia.

Por razón de las tres circunstancias descritas antes, los encargados de la tienda demandada debieron anticipar la posibilidad de accidentes como el de este caso. Ciertamente, era previsible la presencia de gran cantidad de niños *revoloteando por sus facilidades*, como es de esperarse de criaturas que no tienen aún un juicio maduro. Para personas razonables, era también enteramente previsible que tales niños actuasen *impulsivamente* y que pudieran intentar entrar precipitadamente por cualquiera de las puertas de la tienda, que a dichos niños inevitablemente tenían que parecerles ser puertas de entrada. El uso de puertas de salida *poco usuales*, que abren hacia afuera rápida y repen-

tinamente, sin emitir señal o aviso de índole alguna, en áreas donde transitan niños atraídos por las ilusiones que la tienda mercadea, hace a la tienda responsable de lo que le suceda a esos niños al ser golpeados por dichas puertas.

En resumen, pues, en este caso están claramente presentes los elementos de *negligencia comparada*. La madre del menor no ejerció el cuidado debido para vigilar a su niño de 2 años de edad, y la tienda en cuestión no fue enteramente responsable al usar puertas de salida automáticas poco usuales en lugares frecuentados por menores que no saben nada de su funcionamiento. Erró el tribunal de instancia al imputarle la responsabilidad del accidente sólo a la tienda, y la mayoría de este Tribunal al imputársela sólo a la madre.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que los hechos, según surgen de la exposición narrativa de la prueba, demuestran que Toys "R" Us incurrió en negligencia y que es responsable según el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, por los daños sufridos por la parte demandante, disentimos.

## I

De la exposición narrativa de la prueba, certificada por el foro de instancia, se desprende que la prueba testifical consistió de los testimonios de Ana Delia García y Mirelsa Colón, por la parte demandante, y de Jorge Negrón Martínez por la parte demandada. Éstos revelan que el 18 de diciembre de 1991, aproximadamente a las 5 de la tarde, los demandantes Mirelsa Colón y su hijo Carlos Alberto Colón de dos (2) años de edad, acompañados de otros familiares, se disponían a entrar a la tienda de juguetes cono-

cida como Toys "R" Us, localizada en Carolina, Puerto Rico. El acceso de entrada y de salida a dicha tienda lo constituyen dos (2) puertas contiguas ubicadas en una esquina del edificio. La puerta de entrada abre hacia el interior de la tienda y la de salida abre hacia el pasillo que queda en la parte exterior de la tienda, por donde discurren las personas que vienen a visitarla. Cada una de dichas puertas se abre automáticamente con un sistema electrónico que se activa siempre que una persona se para frente a la puerta para entrar o salir, respectivamente.

La señora Mirelsa Colón se dirigía hacia la entrada sujetando con su mano izquierda la mano de su niño. En ese momento había personas a su derecha y al frente. Caminaban por un pasillo, que al acercarse a la entrada se hacía más estrecho, con una verja a la derecha y las puertas de acceso de la tienda a su izquierda.(¹) Para poder llegar a la puerta de entrada, desde donde venían, ellos tenían necesariamente que pasar frente a la puerta de salida. Al reducirse el pasillo, la madre y el menor detuvieron la marcha porque había un grupo de personas aglomeradas al frente de la entrada, intentando entrar por la estrecha puerta de acceso, para hacer sus compras de Navidad. Mientras esperaban que la gente aglomerada entrara a la tienda, la puerta de salida se abrió súbitamente hacia el pasillo impactando el pie izquierdo del niño Carlos Alberto Colón. Exposición Narrativa de la Prueba, pág. 2.

Al momento de ser golpeado en el pie, el niño no se estaba moviendo y en ningún momento la madre le soltó la mano. Estaba parado en el área frente a la puerta de salida, de la mano de su madre, mientras esperaban que se despejara la aglomeración de gente frente a ellos para poder entrar a la tienda. La puerta se abrió súbitamente ha-

_____

(¹) Toys "R" Us colocó en el área de las puertas unas barandas que abren hacia el pasillo y que reducen el ancho del mismo, según el Testimonio de Jorge Negrón Martínez, único testigo de la parte demandada recurrente. Exposición Narrativa de la Prueba, pág. 9.

cia el pasillo, sin emitir aviso o señal de índole alguna. Exposición Narrativa de la Prueba, pág. 4.

El golpe le causó traumas, una intensa profusión de sangre y fuertes dolores. Como consecuencia directa del accidente, el menor perdió la mitad de la uña del dedo. Al momento del juicio, su condición no había sanado y continuaba sufriendo fuertes dolores al caminar.

El tribunal sentenciador concluyó que el referido accidente fue única y exclusivamente causado por la negligencia de la parte demandada al mantener en su establecimiento unas condiciones peligrosas, como lo fueron las puertas de entrada y de salida. Determinó que Toys "R" Us debió haber anticipado —como lo hubiera hecho una persona prudente y razonable— que el mecanismo electrónico para abrir y cerrar las puertas del local podía causarle daños a un niño, como le ocurrió el 18 de diciembre de 1991 al niño Carlos Alberto Colón.

## II

Toys "R" Us alega que erró el tribunal de instancia porque "el criterio de previsión en que se fundamenta la sentencia es contrario al derecho prevaleciente según expuesto por la jurisprudencia de este Tribunal". Solicitud de revisión, pág. 6. No le asiste la razón.

En el Derecho puertorriqueño, el principio de responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Art. 1802 del Código Civil, *supra*. Dicho artículo dispone que cuando por acción u omisión se causa daño a otro, interviniendo culpa o negligencia, se está obligado a reparar el daño causado.

Un elemento esencial de la responsabilidad por culpa o negligencia es el factor de la previsibilidad y el riesgo involucrado en el caso específico. El grado de previsibilidad requerido en cada caso en particular depende del estándar de la conducta aplicable. *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990). El deber de cuidado incluye tanto la obligación de anticipar el riesgo como la de evitar la ocurrencia de

daños, cuya probabilidad es razonablemente previsible. Íd. En cuanto al deber de anticipar un daño, hemos señalado lo siguiente:

> ... la regla de anticipar el riesgo no se limita a que el riesgo o las consecuencias exactas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase. *Ginés Meléndez v. Autoridad de Acueductos*, 86 D.P.R. 518, 524 (1962).

El deber de previsión se extiende a aquel peligro que llevaría a una persona prudente y razonable a anticiparlo. *Hernández v. La Capital*, 81 D.P.R. 1031, 1038 (1960).

Al aplicar la norma de responsabilidad civil en los casos de establecimientos comerciales, este Tribunal ha reiterado que una persona o empresa que mantiene abierto un establecimiento al público, " 'con el objeto de realizar en dicho establecimiento operaciones comerciales para su propio beneficio, debe mantener dicho establecimiento en condiciones de seguridad tales, que la persona inducida a penetrar el mismo, *no sufra ningún daño.*' (Énfasis suplido.)". *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 104 (1986). Véase *Gutiérrez v. Bahr*, 78 D.P.R. 473, 474 (1955).

Asimismo, el propietario de una tienda que utiliza mecanismos electrónicos de seguridad o de otra índole "está en el deber de advertir del peligro existente así como de las precauciones que deben tomar a aquellas [personas] que, por invitación suya, se encuentran en dicho lugar". (Énfasis suprimido.) *Soc. Gananciales v. G. Padín Co., Inc.*, supra, pág. 107 esc. 24. La norma de que el propietario o dueño tiene el deber de mantener el área, a la que tienen acceso sus clientes, como un sitio seguro está firmemente establecida en nuestro Derecho. Véanse: *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644 (1985); *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956); *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961).

En los casos de accidentes en establecimientos comerciales, este Tribunal ha impuesto responsabilidad siempre que el demandante pruebe que existían *condiciones peligrosas* dentro de las tiendas correspondientes, "las cuales

eran de conocimiento de los propietarios o su conocimiento podía imputárseles a estos". (Énfasis suprimido.) *Cotto v. C.M. Ins. Co.*, supra, pág. 650.

## III

En el caso de autos, la demandada creó y mantuvo una condición peligrosa en su tienda. Dicha condición era la puerta de salida, operada con un sistema electrónico que la abría hacia afuera automáticamente, en un área de una tienda de juguetes donde era previsible que un niño de temprana edad fuera golpeado. La puerta constituía una condición peligrosa que debió ser eliminada por Toys "R" Us. Según refleja la exposición narrativa de la prueba, la demandada conocía que en la época navideña aumenta considerablemente el número de clientes que diariamente visitan la tienda y que dicha clientela incluye, en su mayoría, niños de temprana edad. Además, la demandada recurrente fue quien creó la configuración de dos (2) puertas de entrada y salida contiguas en un pasillo estrecho.

La demandada recurrente alega que el niño trataba de entrar por la puerta de salida debido a que la madre así lo permitió. El foro de instancia rechazó dicha versión de los hechos. Un análisis racional de los hechos nos lleva a apoyar la determinación de instancia. Si el niño hubiese estado tratando de entrar por la salida, es lógico que la puerta lo golpeara de frente. Sin embargo, la puerta sólo lo golpeó en el pie izquierdo. Ese hecho incontrovertido brinda apoyo firme a la versión de los demandantes de que no intentaban entrar por la puerta de salida. Debemos respetar las determinaciones de hecho del tribunal a quo. Este Tribunal ha reconocido reiteradamente la norma de que no intervendrá con la apreciación de la prueba hecha por los tribunales de instancia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990); *Rivera Pérez v. Cruz Corchado*, 119

D.P.R. 8 (1987); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

Es insostenible el planteamiento de la demandada en cuanto a que el suceso fue causado por la exclusiva negligencia de la señora Colón al no mantener a su hijo bajo su control. Según la versión que mereció la credibilidad del tribunal sentenciador, la madre no incurrió en negligencia alguna en el cuido y supervisión de su hijo. La señora Colón, desde donde se aproximó a la tienda, no podía ver los letreros que marcan las puertas de entrada y de salida "mirando" hacia el frente de la tienda, puesto que ella venía del lado izquierdo del edificio. *Exhibit* 1-B de la parte demandada. En el momento cuando se acercaba a la entrada, la señora Colón no sabía que la puerta de salida abría hacia el pasillo. Exposición Narrativa de la Prueba, pág. 5. También en este punto, debió respetarse la conclusión del tribunal a quo.

Según surge del expediente, los rótulos de entrada y de salida colocados en la parte superior de las puertas de acceso no eran suficientes para eliminar la condición peligrosa que mantenía Toys "R" Us. Los referidos rótulos no son visibles para un transeúnte que, como los demandantes, camina hacia la entrada desde la parte izquierda del edificio. *Exhibits* 1-A y 1-B de la parte demandada. Tampoco los rótulos advierten que la puerta de salida abre hacia el pasillo.

Por otra parte, las dos (2) barandas colocadas a los lados de la puerta no eliminan la condición de peligrosidad, como argumenta la parte demandada recurrente. Toys "R" Us sabía que podían ocurrir accidentes con la puerta abriendo hacia afuera, aun con las barandas, según surge del testimonio del gerente Negrón Martínez, único testigo de la parte demandada. Exposición Narrativa de la Prueba, pág. 9. Ante el peligro existente, instalaron en la puerta un de-

tector de movimiento para evitar que la puerta abriera mientras alguien se moviera hacia ella. Íd., pág. 8. Sin embargo, el censor no detectaba la presencia de un cuerpo inmóvil. Las medidas tomadas ante la peligrosidad de la puerta no eran suficientes para evitar los daños que previsiblemente podían causarse.

Finalmente, debe observarse que la condición peligrosa podía ser fácilmente eliminada por Toys "R" Us. La instalación de otro tipo de puerta electrónica, como las que abren hacia los lados, hubiera eliminado el peligro de golpear a los niños que se acercan al lugar. Dicha medida de previsión no resulta onerosa para una empresa comercial que se dedica a la venta de juguetes para niños en gran escala. La demandada debió tomar este tipo de medidas para eliminar condiciones peligrosas para los clientes principales de su establecimiento: los niños.

A pesar de que la sentencia recurrida fue dictada conforme a una acertada evaluación de la prueba y con base en el derecho vigente, la mayoría opta por revocar el dictamen recurrido con una escueta sentencia.

Por las razones expuestas, disentimos de la sentencia del Tribunal. En su lugar, confirmaríamos la sentencia recurrida.