SENTENCIA
Los hechos del presente caso, según las determinaciones que hiciera el Tribunal de Primera Instancia luego de evaluar la prueba documental y testifical que fuera presentada, son los siguientes: (1) la noche del 25 de julio de 2002 Nignora Ramos Milano visitó la tienda Sam’s Club localizada en la Avenida Ponce By Pass, en el Municipio de Ponce, con el objetivo de comprar un saco de alimento para perros. Ramos Milano se dirigió al pasillo y al área específica en donde se encontraban las estibas de sacos de cincuenta libras de alimento para perros. Justo al frente de la estiba de sacos que Ramos Milano se disponía a comprar se encontraba una paleta de madera pesada llena de mercancía, que no permitía el libre paso de aquélla con su carrito de compras. El espacio que había entre la góndola que contenía los sacos específicos de alimentos para perro que Ramos Milano interesaba comprar y la paleta de madera pesada que se encontraba en el pasillo era muy estrecho e impedía que Ramos Milano pudiera tomar la mercancía de forma cómoda. Plenamente consciente de la paleta de madera que se encontraba frente a los sacos de comida que se disponía a tomar, Ramos Milano caminó alrededor, se co *114 locó entre medio de ésta y la estiba, se inclinó hacia el frente y se dobló para recoger el saco que se encontraba en la parte inferior de la estiba. Cuando Ramos Milano retomó su posición original, su sandalia se trabó en la paleta de madera y cayó al piso.
A consecuencia de la caída sufrida, el 15 de septiembre de 2003 Ramos Milano, su esposo Luis Orta Rodríguez, la Sociedad Legal de Gananciales compuesta por ambos y los hijos menores de edad del matrimonio, presentaron una demanda en daños y peijuicios contra Wal-Mart de Puerto Rico, propietaria de la tienda Sam’s Club, y su aseguradora. Alegaron, en síntesis, que fueron las acciones culposas y negligentes de la tienda Sam’s Club las que constituyeron la causa próxima de sus daños.
Por su parte, Wal-Mart de Puerto Rico contestó la demanda negando responsabilidad por el incidente. Posteriormente solicitó una vista para que se determinara el aspecto sobre responsabilidad. Dicha vista se celebró el 9 de diciembre de 2004.
Según surge de la transcripción de la referida vista, Ramos Milano admitió que estaba familiarizada con el establecimiento comercial Sam’s Club, su operación general y la mercancía que se vendía en el establecimiento. También admitió que sabía que en la tienda se utilizaban paletas de madera en donde se colocaban mercancías. Específicamente testificó que el día de los hechos, al entrar al pasillo de bolsas de comida para perros, tuvo la oportunidad de ver la paleta de madera que estaba colocada allí, que conocía el peso del saco que se disponía a tomar y que pudo percatarse del estrecho espacio que había entre la paleta y la mercancía. Además, declaró que se dobló para coger el saco y que al pararse no miró hacia atrás antes de dar el paso en esa dirección, lo que ocasionó que su sandalia se enredara y cayera al piso.
*115 Analizados los hechos anteriores, el foro primario emitió una resolución en la cual concluyó, según la teoría general del daño, que el demandado Wal-Mart de Puerto Rico había sido negligente al colocar una paleta pesada de madera en el pasillo, dejando un espacio demasiado estrecho cuando la mercancía contenida en la góndola enfrente eran sacos de comida para perros de cincuenta libras. Según el referido foro, la demandada debió prever que sus clientes requerirían de mayor espacio para poder acceder a dicha mercancía, más aún cuando ésta era sustancialmente pesada.
El foro primario determinó que aplicaba la doctrina de negligencia comparada al presente caso, ya que la demandante incurrió en negligencia “al no tomar las precauciones debidas de un hombre prudente y razonable, al poder haber visto una condición previsiblemente peligrosa y asumir el riesgo de tomar una mercancía sustancialmente pesada en condiciones que no le garantizaban su absoluta seguridad”. Apéndice, pág. 107.
Por entender que la negligencia de Wal-Mart de Puerto Rico fue la que ocasionó de manera predominante el daño ocurrido, el foro de instancia le impuso un setenta por ciento de responsabilidad, e impuso un treinta por ciento de responsabilidad, por la caída que sufrió, a la demandante.
Inconforme con la anterior determinación, Wal-Mart de Puerto Rico acudió al tribunal de apelaciones, mediante un recurso de certiorari. En éste alegó, en síntesis, que el foro primario había errado al imponerle responsabilidad por una condición peligrosa que era conocida por la demandante, y al no determinar que la causa directa del accidente fue la negligencia o inadvertencia de la propia demandante.
*116 Expresando que el foro primario había hecho una determinación apoyada en la prueba desfilada, el tribunal apelativo denegó la expedición del auto solicitado.
Aún inconforme, Wal-Mart acudió ante este Tribunal mediante un recurso de certiorari, en el que imputó al foro apelativo haber errado al
... confirmar al Tribunal de Primera Instancia el cual impuso responsabilidad a un establecimiento comercial por una condición peligrosa que le era conocida a la parte demandante recurrida;
... confirmar al Tribunal de Primera Instancia el cual no determinó que la causa directa del accidente fue la negligencia o inadvertencia de la propia demandante;
... confirmar al Tribunal de Primera Instancia el cual erró en su designación de los porcientos de responsabilidad. Petición de certiorari, pág. 9.
Examinado el recurso de certiorari presentado por la parte peticionaria, concedimos a la parte recurrida el término de veinte días para mostrar causa por la cual este Tribunal no debiera expedir el auto solicitado y dictar sentencia modificatoria de la emitida por el Tribunal de Apelaciones, a los efectos de invertir los porcientos de negligencia confirmados por el referido foro; esto es, un setenta por ciento para la parte demandante y un treinta por ciento para la parte demandada.
La parte recurrida ha comparecido en cumplimiento con la referida orden. Estando en condiciones de resolver el recurso presentado, procedemos a hacerlo.
I
Como es sabido, la teoría de daños y perjuicios, basada en el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, establece que el que por acción u omisión ocasione un daño, interviniendo culpa o negligencia, estará obligado a repararlo. Dicho precepto dispone que todo perjuicio material o moral conlleva su reparación si concurren tres ele *117 mentos básicos: (1) la presencia de un daño físico o emocional en el demandante; (2) que éste haya surgido a raíz de un acto u omisión culposa o negligente del demandado, y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. Santiago v. Sup. Grande, 166 D.P.R. 796 (2006); Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003); Colón y otros v. K-mart y otros, 154 D.P.R. 510 (2001); Montalvo v. Cruz, 144 D.P.R. 748 (1998).
En los casos en que el daño alegado se deba a una omisión, se configurará una causa de acción cuando: (1) exista un deber de actuar y se quebrante esa obligación, y (2) cuando de haberse realizado el acto omitido se hubiese evitado el daño. Colón y otros v. K-mart y otros, ante; Administrador v. ANR, 163 D.P.R. 48 (2004); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990). Así pues, hemos resuelto que la pregunta de umbral en estos casos es si “existía un deber jurídico de actuar de parte del alegado causante del daño”. Arroyo López v. E.L.A., 126 D.P.R. 682, 686-687 (1990).
Particularmente, en casos de deber jurídico de actuar por parte de dueños de establecimientos comerciales, he-mos establecido que una persona o empresa que tiene un establecimiento comercial abierto al público debe tomar las medidas necesarias para que las áreas a las que tienen acceso sus clientes sean razonablemente seguras. Dicho de otra forma, cuando una empresa mantiene abierto al público un establecimiento, con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno. Cotto v. C.M. Ins. Co., 116 D.P.R. 644 (1985).
Este deber incluye la obligación de anticipar y evitar que ocurran daños en el establecimiento. Véase: Colón García v. Toys R Us, Inc., 139 D.P.R. 469, 473 (1995).
Ello no obstante, lo anterior no significa que el dueño de un establecimiento comercial asume una responsabilidad *118 absoluta frente a cualquier daño sufrido por sus clientes. Su deber sólo se extiende al ejercicio del cuidado razonable para su protección. Goose v. Hilton Hotels, 79 D.P.R. 523 (1956).
Para que se le imponga responsabilidad al demandado, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro. Colón y otros v. K-Mart y otros, ante. Así, en los casos de accidentes en establecimientos comerciales, hemos impuesto responsabilidad siempre que el demandante pruebe que existían condiciones peligrosas dentro de la tienda correspondiente, “las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos”. (Énfasis suprimido.) Coito v. C.M. Ins. Co., ante, pág. 650. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que ésta era conocida por el demandado, o que debió conocerla. Admor. F.S.E. v. Almacén Román Rosa, 151 D.P.R. 711 (2000).
En resumen, la norma en nuestra jurisdicción en cuanto a la responsabilidad de los dueños de establecimientos comerciales es que éstos deben ejercer un cuidado razonable para proteger la seguridad de sus clientes;(2) deber que no se traduce, de ninguna forma, en una responsabilidad absoluta por dicha seguridad.
Por esta razón, el demandante que haya sufrido un accidente en un establecimiento comercial tiene la obligación de probar que existía una condición peligrosa en el local, que era conocida por el demandado y que dicha condición peligrosa fue la que con mayor probabilidad ocasionó el daño sufrido.
*119 I HH
El precepto legal antes citado, esto es, el Art. 1802 del Código Civil, ante, permite reducir la compensación de un demandante en la proporción de “[l]a negligencia que se le imputa. A esos efectos, la última oración del referido Art. 1802 dispone que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización”. (Enfasis suplido.)
Esto último se conoce como la doctrina de la negligencia comparada, la cual fue adoptada en nuestra jurisdicción por disposición de la Ley Núm. 28 de 9 de junio de 1956, que añadió la última oración del Art. 1802 de nuestro Código Civil, ante. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., Vol. I, 1986, pág. 411.
Conforme a esta doctrina, “la negligencia concurrente o contribuyente del demandante (y la asunción de riesgos por éste), sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste”. (Enfasis suplido.) Brau del Toro, op. cit, pág. 410.
Esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia. Requiere que en todos los casos el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción (o la percentila) de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante en conformidad con esta distribución de responsabilidad. Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 176 (1996).
Así pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada es necesario analizar y considerar todos los hechos y las circunstancias que mediaron en el caso, y particularmente, si *120 ha habido una causa predominante. Véase Quiñones López v. Manzano Pozas, ante.
Es menester señalar sobre este particular que en nuestra jurisdicción rige la doctrina de causalidad adecuada. Jiménez v. Pelegrina Espinel, 112 D.P.R. 700 (1982); Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127 (1974). De este modo, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente si luego del suceso, al mirarlo retrospectivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. Véanse: Santiago v. Sup. Grande, ante; Administrador v. ANR, ante.
En conformidad con esta teoría, no es causa toda condición sin la cual no se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. Santiago v. Sup. Grande, ante; Arroyo López v. E.L.A., 126 D.P.R. 682 (1990); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990). Así, para determinar cuál fue la causa del daño, el demandante tiene que probar que la omisión del demandado fue la que con mayor probabilidad ocasionó el perjuicio reclamado.
Resulta de lo expuesto que la determinación, en cuanto a que la parte demandante ha incurrido en negligencia y que de alguna manera contribuyó a causar sus propios daños, no significa que el demandado quede exento de responsabilidad. La negligencia comparada de la parte demandante, en consecuencia, sirve para reducir su responsabilidad pecuniaria.
I—I hH hH
Un análisis de la prueba desfilada ante el foro primario —y de la cinta video magnetofónica que grabó la ocurrencia del accidente— demuestra que Ramos Milano, al momento del accidente, era completamente consciente de la paleta de madera interpuesta entre la estiba y el pasillo. Ésta tuvo *121 plena oportunidad de observarla, luego de lo cual caminó alrededor de ella y se colocó entre ésta y la góndola para luego doblarse a recoger el saco. Además, surge de su propio testimonio que luego de doblarse a recoger el saco, no miró hacia atrás antes de dar el paso que la hizo tropezar y caerse. Ramos Milano pudo ver con anticipación que la paleta impedía el libre acceso al estante de sacos de comida para perros y aún así decidió iniciar la cadena de eventos que dieron lugar a su caída.(3) Queda claro, en consecuencia, que Ramos Milano conocía o debió conocer de la condición peligrosa creada por la presencia de la paleta de madera en el medio del pasillo. Por esta razón, era previsible para ella el que pudiera tropezar con ésta. Aun así, continuó adelante.
Reiteradamente hemos señalado que, como norma general, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de instancia. Rodríguez v. Urban Brands, 167 D.P.R. 509 (2006); Argüello v. Argüello, 155 D.P.R. 62 (2001); Torres Ortiz v. Plá, 123 D.P.R. 637 (1989); Valencia, Ex parte, 116 D.P.R. 909 (1986). Sin embargo, en el presente caso, la determinación del foro primario, en cuanto a imponer un setenta por ciento de responsabilidad a Wal-Mart de Puerto Rico y otro de treinta por ciento a Ramos Milano, no encuentra apoyo en la prueba desfilada. En otras palabras, en el presente caso, la demandante falló en demostrar que el accidente que sufrió se debió, de manera predominante, a la negligencia del demandado. Erró el referido foro al hacer dicha determinación.
Un análisis detenido de los hechos ocurridos en el presente caso nos lleva inexorablemente a concluir que el accidente se debió de forma predominante a la negligencia de la demandante. Evidentemente, ésta no actuó con la pre *122 caucion necesaria para evitar tropezar con la paleta de madera. Actuó de forma negligente al así hacerlo.
En su escrito ante nos, Wal-Mart de Puerto Rico alega que siendo la negligencia de Ramos Milano la causa directa de su accidente, debe ser eximido de responsabilidad. No le asiste la razón. De acuerdo con la doctrina de responsabilidad de dueños de establecimientos comerciales, WalMart de Puerto Rico tenía un deber de ejercer un cuidado razonable para evitar que sus clientes sufrieran algún daño. Tal y como lo determinó el foro primario, Wal-Mart de Puerto Rico, ciertamente, infringió dicho deber e incurrió en negligencia al mantener una paleta de madera en el pasillo de su tienda, dejando un espacio limitado entre los anaqueles y ésta. Wal-Mart de Puerto Rico pudo prever que sus clientes necesitarían más espacio para acceder a la mercancía que allí se encontraba. Sin embargo, la condición peligrosa creada por la tienda, repetimos, no fue la que de forma predominante ocasionó el daño.
En consecuencia, conforme a la normativa antes ex-puesta, corresponde reducir su porciento de responsabilidad a un treinta por ciento y aumentar el de la demandante Ramos Milano a un setenta por ciento, ya que fue su propia negligencia la que de forma predominante ocasionó sus daños.
> HH
Por los fundamentos antes expuestos, se expide el recurso presentado, se dicta sentencia modificatoria de la resolución emitida en el presente caso por el Tribunal de Apelaciones y se invierten los por cientos de negligencia determinados por el referido foro; esto es, un setenta por ciento para la parte demandante y un treinta para la parte demandada.
Así lo pronunció, manda el Tribunal y certifica la Secre-
*123 taria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Dichas determinaciones están apoyadas en una cinta video magnetofónica estipulada por las partes que contiene la grabación del accidente sufrido por la demandante.

 Al analizar si se ha ejercido dicho cuidado razonable aplicaremos el estándar de cuidado del “hombre prudente y razonable”. Véase Ramos v. Cario, 85 D.P.R. 353 (1962).

 Así lo determinó el foro primario.