EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nignora Ramos Milano, Et al<br><br>Recurrida<br><br>vs.<br><br>Wal-Mart Puerto Rico, Inc.<br>h/n/c Sam´s Club<br><br>Peticionario | Certiorari<br><br>2006 TSPR 97<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2005-1005

Fecha: 8 de junio de 2006

Tribunal de Apelaciones:

Región Judicial de Ponce

Panel integrado por su Presidente el Juez Gierbolini, la Jueza Cotto Vives y el Juez Aponte Jiménez

Abogado de la Parte Recurrida:

Lcdo. Agustín Díaz García

Abogados de la Parte Peticionaria:

Lcdo. Alberto G. Estrella
Lcdo. Pedro A. Barceló Lugo

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nignora Ramos Milano, et al

    Recurrida

       vs.               CC-2005-1005      CERTIORARI

Wal-Mart Puerto Rico, Inc.
h/n/c Sam's Club

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 8 de junio de 2006

Los hechos del presente caso, según las determinaciones que hiciera el Tribunal de Primera Instancia, luego de evaluar la prueba documental y testifical que fuera presentada, son los siguientes[1]: la noche del 25 de julio de 2002, Nignora Ramos Milano visitó la tienda Sam´s Club localizada en la Avenida Ponce By Pass, en el Municipio de Ponce, con el objetivo de comprar un saco de alimento para perros. Ramos Milano se dirigió al pasillo y al área específica en donde se encontraban las estibas de sacos de cincuenta

_____

[1] Dichas determinaciones están apoyadas en una cinta video magnetofónica estipulada por las partes que contiene la grabación del accidente sufrido por la demandante.

libras (50 lbs.) de alimento para perros. Justo al frente de la estiba de sacos que Ramos Milano se disponía comprar se encontraba una paleta de madera pesada llena de mercancía, que no permitía el libre paso de Ramos Milano con su carrito de compras. El espacio que había, entre la góndola que contenía los sacos específicos de alimentos de perro que Ramos Milano interesaba comprar y la paleta de madera pesada que se encontraba en el pasillo, era uno muy estrecho, que impedía que ésta pudiera tomar la mercancía de forma cómoda. Plenamente <u>consciente</u> de la paleta de madera que se encontraba frente a los sacos de comida que se disponía a tomar, Ramos Milano camino alrededor, se colocó entre medio de ésta y la estiba, se inclinó hacia el frente, y se dobló para recoger el saco que se encontraba en la parte inferior de la estiba. Cuando Ramos Milano retomó su posición original, su sandalia se trabó en la paleta de madera y cayó al piso.

A consecuencia de la caída sufrida, el 15 de septiembre de 2003, Ramos Milano, su esposo, Luis Orta Rodríguez, la Sociedad Legal de Gananciales compuesta por ambos y los hijos menores de edad del matrimonio, presentaron una demanda en daños y perjuicios contra Wal-Mart de Puerto Rico, propietaria de la tienda Sam´s Club y su aseguradora. Alegaron, en síntesis, que fueron las acciones culposas y negligentes de la tienda Sam´s Club las que constituyeron la causa próxima de sus daños.

Por su parte, Wal-Mart contestó la demanda negando responsabilidad por el incidente. Posteriormente solicitó una vista para que se determinara el aspecto sobre responsabilidad. Dicha vista se celebró el 9 de diciembre de 2004.

Según surge de la transcripción de la referida vista, Ramos Milano admitió que estaba familiarizada con el establecimiento comercial Sam´s Club, su operación general y la mercancía que se vendía en el establecimiento. También admitió que sabía que en la tienda se utilizaban paletas de madera en donde se colocaban mercancías. Específicamente testificó que el día de los hechos, al entrar al pasillo de bolsas de comida de perro, tuvo oportunidad de ver la paleta de madera que estaba colocada allí, que conocía el peso del saco que se disponía a tomar y que pudo percatarse del estrecho espacio que había entre la paleta y la mercancía. Además, declaró que se dobló para coger el saco y que al pararse no miró hacia atrás antes de dar el paso en esa dirección que ocasionó que su sandalia se enredara y cayera al piso.

Analizados los hechos anteriores, el foro primario emitió una Resolución en la cual concluyó, según la teoría general del daño, que el demandado Wal-Mart de Puerto Rico había sido negligente al colocar una paleta pesada de madera en el pasillo dejando un espacio demasiado estrecho cuando la mercancía contenida en la góndola frente a la misma eran sacos de comida para perros de cincuenta libras (50 lbs).

Según el referido foro, la demandada debió prever que sus clientes requerirían de mayor espacio para poder acceder a dicha mercancía, más aun cuando los mismos eran sustancialmente pesados.

El foro primario determinó que era de aplicación la doctrina de negligencia comparada al presente caso ya que la demandante incurrió en negligencia "al no tomar las precauciones debidas de un hombre prudente y razonable, al poder haber visto una condición previsiblemente peligrosa y asumir el riesgo de tomar una mercancía sustancialmente pesada en condiciones que no le garantizaban su absoluta seguridad".

Por entender que la negligencia de Wal-Mart fue la que ocasionó de manera predominante el daño ocurrido, el foro de instancia le impuso a ésta un setenta por ciento (70%) de responsabilidad y un treinta por ciento (30%) de responsabilidad, por la caída que sufrió, a la demandante.

Inconforme con la anterior determinación, Wal-Mart acudió al tribunal de apelaciones, mediante recurso de *certiorari*. En el mismo alegó, en síntesis, que el foro primario había errado al imponerle responsabilidad por una condición peligrosa que era conocida por la demandante, y al no determinar que la causa directa del accidente fue la negligencia o inadvertencia de la propia demandante.

Expresando que el foro primario había hecho una determinación apoyada en la prueba desfilada, el tribunal apelativo denegó la expedición del auto solicitado.

Aun inconforme, Wal-Mart acudió ante este Tribunal, mediante recurso de *certiorari* imputándole al foro apelativo haber errado al:

> …confirmar al Tribunal de Primera Instancia el cual impuso responsabilidad a un establecimiento comercial por una condición peligrosa que le era conocida a la parte demandante recurrida;
>
> …confirmar al Tribunal de Primera Instancia el cual no determinó que la causa directa del accidente fue la negligencia o inadvertencia de la propia demandante;
>
> …confirmar al Tribunal de Primera Instancia el cual erró en su designación de los por cientos de responsabilidad.

Examinado el recurso de *certiorari* presentado por la parte peticionaria, concedimos a la parte recurrida el término de veinte (20) días para mostrar causa por la cual este Tribunal no debiera expedir el auto solicitado y dictar Sentencia <u>modificatoria</u> de la emitida en el presente caso por el Tribunal de Apelaciones, a los efectos de invertir los por cientos de negligencia confirmados por el referido foro; esto es, un 70% para la parte demandante y un 30% para la parte demandada.

La parte recurrida ha comparecido en cumplimiento con la referida orden. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

Como es sabido, la teoría de daños y perjuicios, predicada en el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 3141, establece que el que por acción u omisión

ocasione un daño interviniendo culpa o negligencia, vendrá obligado a repararlo. Dicho precepto dispone que todo perjuicio material o moral conlleva su reparación si concurren tres elementos básicos: 1) la presencia de un daño físico o emocional en el demandante; 2) que el mismo haya surgido a raíz de un acto u omisión culposa o negligente del demandado; y 3) que exista un nexo causal entre el daño sufrido y el acto u omisión. Colón v. Supermercados Grande; res. el 24 de enero de 2006, 2006 TSPR 12, Municipio de San Juan v. Bosque Real S.E., res. el 4 de marzo de 2003, 2003 TSPR 31; Colón González v. K-Mart, 154 D.P.R. 510, (2001); Montalvo Feliciano v. Cruz concepción, 144 D.P.R. 748 (1998).

En los casos en que el daño alegado se deba a una omisión, se configurará una causa de acción cuando: 1) exista un deber de actuar y se quebrante esa obligación; y 2) cuando de haberse realizado el acto omitido se hubiese evitado el daño. Colón González v. K-Mart, ante; Bacó v. ANR Construction Corp., res. el 23 de septiembre de 2004, 2004 TSPR 154; Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990). Así pues, hemos resuelto que la pregunta de umbral en estos casos es si "existía un deber jurídico de actuar de parte del alegado causante del daño." Arroyo López v. E.L.A., 126 D.P.R. 682, 686-687 (1990).

Particularmente, en casos del deber jurídico de actuar, por parte de dueños de establecimientos comerciales, hemos establecido que una persona o empresa que tiene un

establecimiento comercial abierto al público debe tomar las medidas necesarias para que las áreas a las que tienen acceso sus clientes sean razonablemente seguras. Dicho de otra forma, cuando una empresa mantiene abierto al público un establecimiento, con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno. Cotto v. C.M. Ins. Co., 116 D.P.R. 644 (1985).

Este deber incluye la obligación de anticipar, así como la de evitar, que ocurran daños en el establecimiento. Véase: Colón García v. Toys "R" Us, 139 D.P.R. 469, 473 (1995).

Ello no obstante, lo anterior no significa que el dueño de un establecimiento comercial asume una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes. Su deber sólo se extiende al ejercicio del cuidado razonable para su protección. Goose v. Hilton Hotels, 79 D.P.R. 523 (1956).

Para que se le imponga responsabilidad al demandado, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro. Colón González v. Tienda K-Mart, ante. Así, en los casos de accidentes en establecimientos comerciales, hemos impuesto responsabilidad siempre que el demandante pruebe que existían condiciones peligrosas dentro de las tiendas correspondientes, "las cuales eran de conocimiento de los

propietarios o su conocimiento podía imputárseles a estos".
<u>Cotto</u> v. <u>C.M. Ins. Co</u>., ante. En otras palabras, el
demandante tiene que probar que su daño se debió a la
existencia de una condición peligrosa, <u>que esa condición fue</u>
<u>la que con mayor probabilidad ocasionó el daño</u>, y que la
misma era conocida por el demandado, o que debió conocerla.
<u>Admor. F.S.E.</u> v. <u>Almacén Román Rosa</u>, 151 D.P.R. 711 (2000).

En resumen, la norma en nuestra jurisdicción en cuanto
a la responsabilidad de los dueños de establecimientos
comerciales es que estos deben ejercer un <u>cuidado razonable</u>
para proteger la seguridad de sus clientes[2]; deber que no se
traduce, de ninguna forma, a una responsabilidad absoluta
por dicha seguridad.

Por esta razón, el demandante que haya sufrido un
accidente en un establecimiento comercial tiene la
obligación de probar que existía una condición peligrosa en
el local, que era conocida por el demandado, <u>y que dicha</u>
<u>condición peligrosa fue la que con mayor probabilidad</u>
<u>ocasionó el daño sufrido</u>.

II

El precepto legal antes citado, esto es, el Artículo
1802 del Código Civil, ante, permite <u>reducir</u> la compensación
de un demandante en la proporción de la negligencia que se
le imputa. A esos efectos, la última oración del referido

---

[2] Al analizar si se ha ejercido dicho cuidado razonable
aplicaremos el estándar de cuidado del "hombre prudente y
razonable". Véase: <u>Ramos</u> v. <u>Carlo</u>, 85 D.P.R. 353 (1962).

Artículo 1802 dispone que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.

Esto último se conoce como la doctrina de la negligencia comparada, la cual fue adoptada en nuestra jurisdicción por disposición de la Ley Núm. 28 de 9 de junio de 1956, que adicionó la última oración del Artículo 1802 de nuestro Código Civil, ante. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986.

Conforme a esta doctrina, la negligencia concurrente o contribuyente del demandante (y la asunción de riesgos por éste), sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste. Brau del Toro, op. cit.

Esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia. Requiere que en todos los casos el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción (o la percentila) de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad. Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 176 (1996).

Así pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y, particularmente, si ha habido una causa predominante. Véase: Quiñones López v. Manzano Pozas, ante.

Es menester señalar sobre este particular que en nuestra jurisdicción rige la doctrina de causalidad adecuada. Jiménez v. Pelegrina Espinet, 112 D.P.R. 700 (1982); Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127 (1974). De este modo, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso, mirándolo retrospectivamente, el mismo parece ser la consecuencia razonable y común de la acción u omisión de que se trate. Véase: Colón v. Supermercados Grande; ante, Bacó v. ANR Construction Corp., ante.

De conformidad con esta teoría no es causa toda condición sin la cual no se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. Colón v. Supermercados Grande; ante Arroyo López v. E.L.A., 126 D.P.R. 682 (1990); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990). Así, para determinar cuál fue la causa del daño, el demandante tiene que probar que la omisión del demandado fue la que con mayor probabilidad ocasionó el perjuicio reclamado.

Resulta de lo anteriormente expuesto que la determinación en cuanto a que la parte demandante ha incurrido en negligencia y que de alguna manera contribuyó a causar sus propios daños no significa que el demandado quede exento de responsabilidad. La negligencia comparada de la parte demandante, en consecuencia, sirve para reducir la responsabilidad pecuniaria del demandante.

## III

Un análisis de la prueba desfilada ante el foro primario --y de la cinta video magnetofónica que grabó la ocurrencia del accidente-- demuestra que Ramos Milano, al momento del accidente, estaba completamente consciente de la paleta de madera interpuesta entre la estiba y el pasillo. Ésta tuvo plena oportunidad de observarla, luego de lo cual caminó alrededor de ella y se colocó entre ésta y la góndola para luego doblarse a recoger el saco. Además, surge de su propio testimonio que luego de doblarse a recoger el saco, no miró hacia atrás antes de dar el paso que la hizo tropezar y caerse. Ramos Milano pudo ver con anticipación que la paleta impedía el libre acceso al estante de sacos de comida para perros y aun así decidió iniciar la cadena de eventos que dieron lugar a su caída.[3] Queda claro, en consecuencia, que Ramos Milano conocía o debió conocer de la condición peligrosa creada por la presencia de la paleta de madera en el medio del pasillo. Por esta razón, era

_____

[3] Así lo determinó el foro primario.

previsible para ella el que pudiera tropezar con ésta. Aun así, continuó adelante.

Reiteradamente hemos señalado que, como norma general, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de instancia. Rodriguez Oquendo v. Petri, res. el 11 de abril de 2006, 2006 TSPR 56; Arguello López v. Arguello García, res. el 31 de agosto de 2001, 2001 TSPR 124; Torres Ortiz v. Pla, 123 D.P.R. 637 (1989); Ex parte Valencia, 116 D.P.R. 909 (1986). Sin embargo, en el presente caso, la determinación del foro primario, en cuanto a imponer un por ciento de responsabilidad de 70% a Wal-Mart y otro de 30% a Ramos Milano, no encuentra apoyo en la prueba desfilada. En otras palabras, en el presente caso, la demandante falló en demostrar que el accidente que sufrió se debió, de manera predominante, a la negligencia del demandado. Erró el referido foro al hacer dicha determinación.

Un análisis detenido de los hechos ocurridos en el presente caso nos lleva inexorablemente a concluir que el accidente se debió de forma predominante a la negligencia de la demandante. Evidentemente, ésta no actuó con la precaución necesaria para evitar tropezar con la paleta de madera. Actuó de forma negligente al así hacerlo.

En su escrito ante nos, Wal-Mart alega que siendo la negligencia de Ramos Milano la causa directa de su accidente, debe ser eximido de responsabilidad. No le asiste

la razón. De acuerdo a la doctrina de responsabilidad de dueños de establecimientos comerciales, Wal-Mart tenía un deber de ejercer un cuidado razonable para evitar que sus clientes sufrieran algún daño. Tal y como lo determinó el foro primario, Wal-Mart, ciertamente, infringió dicho deber, e incurrió en negligencia, al mantener una paleta de madera en el pasillo de su tienda, dejando un espacio limitado entre los anaqueles y ésta. Ésta pudo prever que sus clientes necesitarían más espacio para acceder a la mercancía que allí se encontraba. Sin embargo, la condición peligrosa creada por la tienda, repetimos, no fue la que de forma predominante ocasionó el daño.

En consecuencia, conforme a la normativa antes expuesta, corresponde reducir su por ciento de responsabilidad a un 30% y aumentar el por ciento de responsabilidad de la demandante Ramos Milano a un 70%, ya que fue su propia negligencia la que de forma predominante ocasionó sus daños.

IV

Por los fundamentos antes expuestos, se expide el recurso radicado y se dicta Sentencia modificatoria de la Resolución emitida en el presente caso por el Tribunal de Apelaciones y se invierten los por cientos de negligencia determinados por el referido foro; esto es, un 70% para la parte demandante y un 30% para la parte demandada.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente.


                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nignora Ramos Milano, Et Al-

    Recurridos

                              CC-2005-1005

Certiorari
      vs.

Wal-Mart Puerto Rico, Inc.
h/n/c Sam's Club

    Peticionarios

Opinión Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 8 de junio de 2006.


Reiteradamente hemos resuelto que los foros apelativos no deben usurpar las funciones de adjudicación del Tribunal de Primera Instancia. Hemos insistido una y otra vez en que la apreciación de la prueba corresponde al foro ante el cual ésta desfiló; y que el foro apelativo no intervendrá con las determinaciones de hechos y la adjudicación de credibilidad del tribunal de instancia a menos que se demuestre que éste abusó de su discreción y actuó con prejuicio o parcialidad. Colón Muñoz v. Lotería de Puerto Rico, res. el 20 de abril de 2006, 167 D.P.R. ____, 2006 TSPR 65, 2006 JTS 74; Rodríguez Oquendo v. Petrie Retail, Inc., res. el 11 de abril de 2006, 167

D.P.R. _____, 2006 TSPR 56, 2006 JTS 65; Argüello v. Argüello, 155 D.P.R. 62 (2001); Trinidad v. Chade, 153 D.P.R. 280 (2001); Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987); Lluch v. España Service Sta., 117 D.P.R. 729 (1986); Morán Simó v. Gracia Cristóbal, 106 D.P.R. 155 (1977).

En el caso de autos, no hay indicio alguno de que **hubo abuso de discreción o prejuicio y parcialidad de parte del tribunal de instancia**. Así lo resolvió expresamente el Tribunal de Apelaciones, que confirmó íntegramente el dictamen del foro de instancia.

A pesar de lo anterior, una mayoría de este Tribunal estima que el foro que recibió la prueba y adjudicó los hechos erró al distribuir la responsabilidad en su dictamen de negligencia comparada, por lo que esta mayoría en su propia sentencia altera e invierte los por cientos de responsabilidad adjudicados por el foro de instancia. **La mayoría de este Tribunal actúa así sin resolver expresamente antes que hubo prejuicio o parcialidad de parte del foro de instancia o que éste abusó de su discreción**. Se limita la mayoría a decir que el foro de instancia **"erró"**, pero tal criterio **no cumple de ningún modo con la normativa citada antes** sobre cuándo puede un foro apelativo sustituir su criterio por el del juzgador de los hechos que tuvo contacto directo con la prueba. El criterio de que el foro de instancia meramente **"erró"** no implica que hubo prejuicio o parcialidad, ni que abusó de su discreción. Así pues, la sentencia de la mayoría de este Tribunal en el caso de autos

es **improcedente**, por no ajustarse a la bien conocida norma que rige la función apelativa.

En mi criterio, la sentencia de la mayoría del Tribunal en este caso es improcedente y errada, por una segunda razón. En el caso de autos, el accidente sufrido por la señora demandante se debió mayormente a la negligencia de Wal-Mart, al colocar las paletas de madera como lo hizo. Dichas paletas estaban tan mal colocadas que una persona como la demandante no tenía un espacio de modo alguno adecuado para poder accesar y tomar los muy pesados sacos de alimento que le interesaba comprar. Resolver, como lo hace la mayoría del Tribunal, que la cliente conocía la dificultad de acceso de dichos sacos, y que por eso fue su negligencia la mayormente determinante del accidente, es un juicio insólito y desacertado. **Significa que una cliente que va a una tienda tiene que ajustarse obligadamente a las condiciones peligrosas a que los dueños de la tienda someten al cliente**. Como tal criterio es insostenible, no puede haber duda alguna de que **la causa predominante del accidente en cuestión fue la negligencia de Wal-Mart**, como correctamente lo determinaron el foro de instancia y el foro apelativo, conforme a nuestra jurisprudencia. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Molina, Caro v. Dávila Parrilla, 121 D.P.R. 362 (1988). Aplica claramente aquí lo que es la norma rectora en situaciones como la de autos, la cual formulamos con meridiana claridad en Santaella Negrón v. Licari, 83 D.P.R. 887 (1961):

"No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro."

Como la mayoría del Tribunal abandona ahora en el caso de autos unas normas y principios bien establecidos en nuestro ordenamiento jurídico, para favorecer a unos poderosos intereses comerciales por encima del consumidor común y corriente, yo vehementemente disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO